**BRYAN CAVE LLP**
Jennifer A. Jackson (SBN 192998)
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200
jjackson@bryancave.com

**BRYAN CAVE LLP**
Robert J. Hoffman (*Pro Hac Vice*)
Tarun Mehta (*Pro Hac Vice*)
3500 One Kansas City Place
1200 Main Street
Kansas City, Missouri 64105
Telephone:    (816) 374-3200
Facsimile :    (816) 374-3300

Attorneys for Defendant
GFSI, INC. d/b/a GEAR FOR SPORTS, INC.

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT TRENT JONES II, INC., and ROBERT TRENT JONES LICENSING GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GFSI, INC. d/b/a GEAR FOR SPORTS, INC.,<br><br>Defendant. | Case No. C07-04913-EDL<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

SM01DOCS\663697.1

## Table of Contents

Page

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................... 1

    A. The Parties, The License Agreement And Their History. ........................................ 1

    B. Plaintiffs' Allegations Are Based On Alleged Historical Wrongs. .......................... 2

III. STANDARD OF REVIEW .................................................................................................. 3

IV. ARGUMENT PLAINTIFFS' DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION AND THEREFORE THEIR MOTION SHOULD BE DENIED. ............................................................................................................................... 3

    A. Plaintiffs' Have Failed to Demonstrate Probable Success on the Merits. ................ 3

        1. GFSI is Not Selling Clothing Bearing the RTJ Marks to "Discount Stores". ................................................................................................................. 4

            i. Plaintiffs' Allegations. ................................................................................ 4

            ii. Sales to Stein Mart, NMLC, Syms Corporation, Gabriel Brothers and Hockabees. ............................................................................. 5

        2. GFSI Does Not Sell Clothing that is Either Damaged, Defective, or Seconds Without First Removing the RTJ Marks. ........................................ 6

            i. Plaintiffs' Allegations do Not Conform to the Evidence. .................. 6

            ii. Declarations of Zetlmeisl and Burgett. .............................................. 7

            iii. Plaintiffs' Stretching of the Evidence. .............................................. 8

        3. TGW is Not a "Discount Store". .................................................................. 9

    B. Plaintiffs' Have Failed to Prove the Likelihood of Irreparable Harm. ................... 11

    C. The Balance Of Harms Tips Sharply In GFSI's Favor. ......................................... 12

    D. The Public Policy Would Be Disserved By Issuance Of The Injunction. ............. 13

V. CONCLUSION .................................................................................................................... 13

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

**Table of Authorities**

Page

**CASES**

*Bernhardt v. County of Los Angeles,*
   339 F.3d 920 (9th Cir. 2003)............................................................................ 12, 13

*Charles Schwab & Co. v. Hibernia Bank,*
   665 F. Supp. 800 (N.D. Cal. 1987) ......................................................................... 3

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ............................................................................................... 11

*Covington Props. of Lynchburg, Inc. v. G. C. Murphy Co.,*
   8 Va. Cir. 353 (Cir. Va. 1987)................................................................................ 9

*Darring v. Kincheloe,*
   783 F.2d 874 (9th Cir. 1986)............................................................................... 11

*Fedtro, Inc. v. Kravex Mfg. Corp.,*
   313 F. Supp. 990 (E.D.N.Y. 1970)........................................................................ 9

*In re City Stores Co.,*
   9 B.R. 717 (B.R. S.D.N.Y. 1981)..................................................................... 9, 10

*New West Corp. v. NYM Co. of Cal., Inc.,*
   595 F.2d 1194 (9th Cir. 1979)............................................................................... 3

*Nissan Motor Co. v. Nissan Computer Corp.,*
   No. 99-12980, 2007 U.S. Dist. LEXIS 90487, *59 (C.D. Cal. Sept. 21, 2007)...... 11

*Oakland Tribune, Inc. v. Chronicle Pub. Co.,*
   762 F.2d 1374 (9th Cir. 1985)......................................................................... 11, 12

*Preminger v. Principi,*
   422 F.3d 815 (9th Cir. 2005)................................................................................. 3

*Quechan Tribe of Indians v. Rowe,*
   531 F.2d 408 (9th Cir. 1976)................................................................................. 1

*Rahoi v. Sirin,*
   06-C-691-C, 2007 U.S. Dist. LEXIS 70312, *3 (W.D. Wisc. Sept. 21, 2007)...... 11

*San Diego County Gun Rights Comm. v. Reno,*
   98 F.3d 1121 (9th Cir. 1996)............................................................................. 3, 6

*Sardi's Restaurant Corp. v. Sardi,*
   755 F.2d 719 (9th Cir. 1985)................................................................................. 3

*Weinberger v. Romero-Barcelo,*
   456 U.S. 305 (1982)............................................................................................ 13

**STATUTES**

15 U.S.C. § 1114 ....................................................................................................... 3

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Defendant GFSI, Inc. d/b/a Gear for Sports, Inc. ("GFSI") files this Opposition to Plaintiffs' Motion for a Preliminary Injunction and states as follows:

## I. INTRODUCTION

Plaintiffs' request for injunctive relief is based on alleged historical violations of the contract that binds the parties' business relationship. Their Motion should be denied because historical wrongdoings are an insufficient basis, as a matter of law, to grant injunctive relief.[1]

Moreover, Plaintiffs' Motion should be denied because they cannot meet any of the elements necessary to establish entitlement to injunctive relief. Plaintiffs' Motion is based on an inaccurate legal conclusion and an incorrect factual allegation. As demonstrated below, Plaintiffs' cannot prove a probability of success on the merits of their claim, nor can they demonstrate irreparable harm, nor that the balance of hardships tips sharply in their favor should this Motion be denied. For these and the reasons cited below, Plaintiffs' Motion should be denied.

## II. STATEMENT OF FACTS

### A. The Parties, The License Agreement And Their History.

Plaintiffs Robert Trent Jones II, Inc. ("RTJ, Inc."), and Robert Trent Jones Licensing Group, LLC ("RTJ Licensing") (collectively "Plaintiffs"), are California corporations with their principal places of business in Palo Alto, California. *See* Complaint ("Compl."), ¶ 3. Plaintiffs own and use registered trademarks and service marks (the "RTJ Marks"), that they have granted permission to GFSI to use via a License Agreement executed on September 22, 2004. *See* Compl., ¶¶ 4-5. GFSI is a Delaware corporation with its principal place of business in Lenexa, Kansas. *See* Ex. A, Declaration of Larry Graveel ("Graveel Dec."), ¶ 3.

The business venture that the parties embarked upon turned out to not be as successful as everyone had hoped. The RTJ Marks, in connection with golf apparel, were not popular among

---

[1] GFSI denies any historical violations of the License Agreement, but notes that this point is moot because the issue, for purposes of this Motion, is whether there are any ongoing or potential future violations of the License Agreement. *See Quechan Tribe of Indians v. Rowe*, 531 F.2d 408, 410 (9th Cir. 1976) (injunctive relief only appropriate when there is "the threat of irreparable future harm."). Hence, though perhaps relevant to the Complaint itself, allegations regarding any historical violations against GFSI (though untrue) are irrelevant for purposes of determining this Motion for a Preliminary Injunction.

purchasers and potential purchasers. *See* Ex. A, Graveel Dec., ¶ 7. Due to the low sales of RTJ Apparel, GFSI initiated numerous discussions with RTJ2 about alternatives to the failing business plan that the parties were striving to meet. *See* Ex. A, Graveel Dec., ¶ 8. There was a disagreement in the summer of 2007 regarding what stores constituted "discount stores"; however, to accommodate Plaintiffs, GFSI ceased selling to the stores RTJ2 claimed were "discount stores". *See* Ex. A, Graveel Dec., ¶ 9.

**B.    Plaintiffs' Allegations Are Based On Alleged Historical Wrongs.**

At the heart of Plaintiffs' claim is the License Agreement of September 22, 2004 ("License Agreement"), attached as Ex. B. Plaintiffs' allege that an injunction should issue because GFSI is allegedly: (1) currently selling clothing bearing the RTJ Marks to "discount stores", and (2) because GFSI is allegedly selling clothing that is either damaged, defective, or seconds without first removing the RTJ Marks. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction ("Motion") at 6, 12-13. Both of these allegations are untrue, and even Plaintiffs' Declarations filed in support of the Motion do not establish any ongoing wrongdoing other than by pure conjecture. Plaintiffs' witnesses declare that they have, in a few instances, found RTJ Apparel available for sale on-line by specific retail stores. But that does not establish that GFSI is currently selling or distributing to those retailers—merely that there were historical sales—a point RTJ2 admits to having known for more than six months. This is not the stuff that injunctions are made of. Far from it. Plaintiffs' own Declarations demonstrate that RTJ2 has been well aware—for a long time—that GFSI historically made sales to Stein Mart, Syms, Neiman Marcus Last Call (though GFSI has never sold RTJ Apparel bearing the RTJ Marks to Neiman Marcus Last Call) and others whom RTJ2 considers to be "discounters." Why did this suddenly become an emergency situation in which there is a risk to RTJ2 of immediate irreparable harm? Plaintiffs Motion and supporting documents do not endeavor to address this obvious deficiency in Plaintiffs' current request for relief. Plaintiffs' Motion should be denied for its facial failure to demonstrate the likelihood of future irreparable harm.

### III. STANDARD OF REVIEW

Where Plaintiffs' request injunctive relief, they have the burden of showing "a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury." *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

To meet the Ninth Circuit standards for a preliminary injunction, the plaintiff must demonstrate: (1) probable success on the merits *and* the possibility of irreparable injury; *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships are tipped sharply in his favor. *See Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 803 (N.D. Cal. 1987), citing, *Sardi's Restaurant Corp. v. Sardi*, 755 F.2d 719, 723 (9th Cir. 1985). This test governs in trademark infringement cases. *See Charles Schwab & Co.*, 665 F. Supp. at 803.

In order for the plaintiff to prevail in a case for trademark infringement, the plaintiff must show two basic elements: (1) a valid, protectable mark; and (2) a likelihood of confusion, mistake, or deception in defendant's use of the trademark. *See id*, citing, *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1198-1202 (9th Cir. 1979). The test for infringement of plaintiff's registered trademark under 15 U.S.C. § 1114, is "whether the use of the trademark by defendant has been in a manner likely to confuse the public about the origin, sponsorship, or endorsement of defendant's product or service." *Charles Schwab & Co.*, 665 F. Supp. at 803 (internal quotations omitted).

### IV. ARGUMENT

**PLAINTIFFS' DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION AND THEREFORE THEIR MOTION SHOULD BE DENIED.**

**A.    <u>Plaintiffs' Have Failed to Demonstrate Probable Success on the Merits.</u>**

Plaintiffs have the burden of demonstrating that they will likely succeed on the merits of their claims. *See Preminger v. Principi*, 422 F.3d 815, 824 (9th Cir. 2005) ("At the preliminary injunction stage, Plaintiffs have the burden of proof."). Plaintiffs have failed to meet this burden because they have not provided sufficient evidence that either: (1) GFSI is selling clothing bearing the RTJ Marks to "discount stores"; and (2) Plaintiffs' have failed to provide sufficient evidence that GFSI is selling RTJ apparel that is either defective, damaged or seconds without first

removing the RTJ Marks. Since they have not met their burden of proof regarding these allegations, Plaintiffs cannot prove that they will have probable success on the merits of their claim.

### 1. GFSI is Not Selling Clothing Bearing the RTJ Marks to "Discount Stores".

#### i. Plaintiffs' Allegations.

The first of Plaintiffs' two factual allegations is the false assertion that GFSI is selling clothing bearing the RTJ Marks to "discount stores". *See* Motion at 11-12. Specifically, Plaintiffs allege that GFSI is selling clothing bearing the RTJ Marks to: 1) Stein Mart; 2) Neiman Marcus Last Call ("NMLC"); 3) Gabriel Brothers; 4) Syms Corporation; 5) Hockabees, and; 6) The Golf Warehouse ("TGW"). *See* Motion at 11-12. This is factually inaccurate.

With the exception of TGW, GFSI is not selling any clothing bearing the RTJ Marks to any of the above-mentioned stores. *See* Ex. A, Graveel Dec., ¶¶ 9-16; Ex. C, (GFSI Invoices Regarding Sales to Stein Mart, NMLC, Gabriel Brothers, Syms Corporation, Hockabees, and TGW ("GFSI Invoices"). Indeed, GFSI has not sold any clothing whatsoever to Stein Mart, NMLC, Syms Corporation, nor Hockabees (with the exception of two inadvertent sales to Hockabees totaling $812.50) within the past 10-12 months. *See* Ex. A, Graveel Dec., ¶¶ 9-16; Ex. C, GFSI Invoices. Further, GFSI has never sold clothing bearing the RTJ Marks to NMLC. *See* Ex. A, Graveel Dec., ¶ 13. Finally, clothing sold to Gabriel Brothers within the past 10 months were damaged, defective, returned, odd-lots, or seconds and had the RTJ Marks removed prior to sale. *See* Ex. A, Graveel Dec., ¶ 15. Hence, the only ongoing dispute concerns the issue of whether TGW is a "discount store", since that is the only store cited in Plaintiffs' Motion that GFSI is indeed selling to based on its contractual right to do so. As is demonstrated, *infra*, in Section IV(A)(3), TGW is not a discount store.

Simply put, Plaintiffs' have failed to proffer any evidence that GFSI has sold any RTJ apparel to Stein Mart, NMLC, Syms Corporation, Gabriel Brothers nor Hockabees bearing the RTJ Marks within the past 10-12 months (save for two insignificant accidental sales to Hockabees), and the evidence demonstrates that GFSI has not.

        ii.    **Sales to Stein Mart, NMLC, Syms Corporation, Gabriel Brothers and Hockabees.**

Plaintiffs' allegations that GFSI is currently selling clothing to Stein Mart, NMLC, Syms Corporation, Gabriel Brothers, and Hockabees are supported only by the declarations of Robert Trent Jones, and Mary K. Hadley, along with the exhibits attached to said declarations. *See* Motion at 11-13. The evidence presented, however, is insufficient to prove that GFSI is currently selling to any of these five stores. Indeed, the most reliable evidence available—the sales invoice summaries of GFSI—conclusively demonstrates that there have been no sales to these stores within the past 10 months bearing the RTJ Marks. *See* Ex. C, GFSI Invoices. Further, nothing in Plaintiffs' Motion nor in their exhibits' cites to any evidence that GFSI is currently selling to Gabriel Brothers. However, all RTJ apparel sold to Gabriel Brothers have been done only after the RTJ Marks have been removed. *See* Ex. A, Graveel Dec., ¶ 15. Plaintiffs' do not contest this in their Motion with regards to Gabriel Brothers.

Plaintiffs' cite to paragraph 20 of Jones' Declaration for the proposition that GFSI is currently selling clothing to Stein Mart, NMLC and TGW. *See* Motion at 11. Paragraph 20 of Jones' Declaration merely notes that "[t]hree of the top ten accounts are accounts which are considered discounters. The top account is Steinmart a discount retailer." *See* Motion at 11. However, Jones' Declaration, citing to the 2007 GFSI Marketing, Distribution, Financial and Quality Plan, submitted to RTJ2 on or about June 25, 2007 (the "2007 GFSI Plan"), provides no basis in fact or logic that suggests that GFSI is *currently* selling to either Stein Mart or NMLC. The fact that the top accounts are with Stein Mart and NMLC only evince the fact that other stores refuse to purchase RTJ apparel, not that GFSI is currently selling to those stores.

The fact is that, in June 2007, the parties had a disagreement regarding what stores constituted "discount stores". *See* Ex. A, Graveel Dec., ¶ 9. Though GFSI disagrees with Plaintiffs' characterization of certain stores as "discount stores", as an accommodation to Plaintiffs, GFSI has, since June, ceased the sale of any goods bearing the RTJ Marks to those stores. *See* Ex. A, Graveel Dec., ¶ 9. Moreover, it has been more than 10 months since GFSI has sold any RTJ apparel bearing the RTJ Marks to Stein Mart, Syms Corporation, Gabriel Brothers,

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

nor Hockabees, and they have never sold clothing bearing the RTJ Marks to NMLC. *See* Ex. A, Graveel Dec., ¶¶ 9-16; Ex. C, GFSI Invoices. Nothing in Jones' Declaration or in Plaintiffs' Motion cites to any evidence to the contrary.

Similarly, Hadley's Declaration only evinces the fact that she was able to purchase clothing bearing the RTJ Marks from Hockabees, not that GFSI is currently selling to Hockabees. The remainder of Hadley's Declaration consists of information obtained from various companies' websites. Again, this is not evidence that GFSI is currently selling to these companies, nor that GFSI will sell to them in the future. At best, Plaintiffs' have proven that, about a year ago, GFSI sold goods bearing the RTJ Marks to certain stores and that said stores have been unable to sell such goods because of the unpopularity of the brand. This is not a sufficient basis for which to request injunctive relief as there is no threat of a future sale to these stores. *See San Diego County Gun Rights Comm.*, 98 F.3d at 1126 (Where Plaintiffs' request injunctive relief, they have the burden of showing "a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury.").

### 2. GFSI Does Not Sell Clothing that is Either Damaged, Defective, or Seconds Without First Removing the RTJ Marks.

#### i. Plaintiffs' Allegations do Not Conform to the Evidence.

Plaintiffs' Motion is similarly void of any evidence to support their contention that GFSI is selling clothing that is either damaged, defective or seconds with the RTJ Marks intact. Plaintiffs' Motion cites to the Declarations of Jones, Zetlmeisl, and Burgett for the proposition that GFSI is currently selling RTJ apparel that is either damaged, defective or seconds to discount stores and secondary markets with the RTJ Marks still intact. *See* Motion at 12-13. Paragraph 23 of Jones' Declaration cites to a letter dated July 13, 2007, from Larry Graveel (president of GFSI) to Robert Trent Jones, which states that some "secondary market sales **did** include the RTJ labels and hang tags." *See* Ex. D, Letter from Graveel to Jones, Dated July 13, 2007 ("Letter") at 3 (emphasis supplied). Notably, the letter did not claim that it had ever sold clothing that was damaged, defective or seconds bearing the RTJ Marks, and no such sales have been made. *See* Ex. A, Graveel Dec., ¶ 20.

As explained above, the parties have a dispute about the meaning of the terms in the License Agreement, and attempted to resolve those disputes in a meeting in June 2007. *See* Ex. A, Graveel Dec., ¶ 9. Though GFSI disagrees with Plaintiffs' characterization of certain stores as "discount stores", as an accommodation to Plaintiffs, GFSI has, since June, ceased the sale of any goods bearing the RTJ Marks to those stores. *See* Ex. A, Graveel Dec., ¶ 9. This is why the July 2007 letter from Graveel to Jones stated that some past "secondary market sales ___did___" include the RTJ Marks; nothing in the letter indicated that current or future sales would include the RTJ Marks. Indeed, sales to Stein Mart, Syms Corporation and Hockabees have ceased since that June meeting, and no sale of RTJ Apparel bearing the RTJ Marks were ever made to NMLC. *See* Ex. A, Graveel Dec., ¶¶ 9-16; Ex. C, GFSI Invoices. Moreover, sales of items to Gabriel Brothers have not included the RTJ Marks. *See* Ex. A, Graveel Dec., ¶ 15. Plaintiffs' remaining "evidence" (i.e., the Declarations of Zetlmeisl and Burgett) is void of any facts to support their contentions that GFSI is selling clothing that is either damaged, defective or seconds with the RTJ Marks intact.

### ii. Declarations of Zetlmeisl and Burgett.

According to the Declarations of Thomas B. Zetlmeisl, and Jay M. Burgett, they visited GFSI's corporate headquarters in August 2007. *See* Ex. E, Zetlmeisl Dec., ¶¶ 1-2; Ex. F, Burgett Dec., ¶¶ 1-2. During that meeting they met the Director of Accounting and the Controller for GFSI. *See* Ex. E, Zetlmeisl Dec., ¶ 3; Ex. F, Burgett Dec., ¶ 3. Without any basis, Zetlmeisl alleges in his Declaration: "Based upon my understanding of GFSI's procedures for selling RTJ Apparel to secondary markets, I believe that returned defective or damaged RTJ Apparel products are sold to secondary markets with the Robert Trent Jones labels remaining on the products." *See* Ex. E, Zetlmeisl Dec., ¶ 21. Burgett's Declaration makes an identical claim. *See* Ex. F, Burgett Dec., ¶ 12. Zetlmeisl and Burgett apparently base this conclusion on the fact that the Director of Accounting, and the Controller for GFSI "were not aware of the labels and/or tags being removed prior to sale." *See* Ex. E, Zetlmeisl Dec., ¶ 29. However, even Zetlmeisl and Burgett admit that they are unsure of whether the RTJ Marks are removed prior to the sale of clothing that is defective, damaged or seconds. *See* Ex. E, Zetlmeisl Dec., ¶ 29; Ex. F, Burgett Dec., ¶ 19

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

("Unless there is a label and/or tag removal step that I was not informed of, GFSI does not remove the labels and/or tags from RTJ Apparel prior to selling the product to secondary markets.").

Indeed, there is a removal process that Zetlmeisl and Burgett are unaware of. The fact that the Director of Accounting and the Controller for GFSI (two high-level officers of GFSI who do not oversee clothing-tag removals) were not familiar with this process is not affirmative evidence that GFSI fails to remove RTJ Marks on RTJ apparel that is either damaged, defective or seconds. The only evidence that speaks directly to this issue is the Declaration of GFSI's President, Larry Graveel, who testified that no RTJ apparel that is either damaged, defective or seconds is sold bearing the RTJ Marks. *See* Ex. A, Graveel Dec., ¶ 20.

### iii. Plaintiffs' Stretching of the Evidence.

Not only does the evidence not support Plaintiffs' contentions, Plaintiffs' Motion also makes some incredible claims based on the Declarations of Zetlmeisl and Burgett that are inconsistent with their testimony. For instance, Plaintiffs' allege that "information provided by GFSI during a financial review conducted at GFSI's facilities in August 2007, confirmed that it is not GFSI's practice to remove RTJ Marks prior to selling such defective product to Secondary Markets." *See* Motion at 13, citing Ex. E, Zetlmeisl Dec., ¶ 29; Ex. F, Burgett Dec., ¶ 19. However, the Declarations cited do not support that contention. The paragraphs cited in those Declarations merely declare that Zetlmeisl and Burgett requested information regarding GFSI's procedures for selling RTJ apparel to the secondary market, and that they have failed to receive this information. *See* Ex. E, Zetlmeisl Dec., ¶ 29; Ex. F, Burgett Dec., ¶ 19. It is quite a stretch to cite a Declaration that testifies that it requested information and did not receive it and conclude from that Declaration that "information provided" affirmatively "confirmed" a particular practice by GFSI.

Similarly, Plaintiffs' Motion alleges that "Plaintiffs' own representatives [i.e., Zetlmeisl and Burgett] were informed that specific defective product, with the RTJ Marks intact, was to be sold to secondary markets." *See* Motion at 13, citing, Ex. E, Zetlmeisl Dec., ¶¶ 26-27; Ex. F, Burgett Dec., ¶¶ 16-17. Again, Plaintiffs' contentions are an unfair characterization of the Declarations cited. The provisions cited within those Declarations only say that storage bins are

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

used to warehouse both defective and non-defective RTJ apparel. Nothing in either of these Declarations state that the defective RTJ Apparel are sold with the RTJ Marks intact, only that they are contained within the same storage bins prior to sale, and are sorted once an order is received for the product, and prior to its sale. Ex. E, Zetlmeisl Dec., ¶¶ 26-27; Ex. F, Burgett Dec., ¶¶ 16-17.

Needless to say, the fact that damaged or defective clothing is stored together with undamaged clothing does not mean that the damaged or defective clothes are sold with the RTJ Marks intact. Indeed, the RTJ Marks are removed before any damaged or defective clothing is sold. *See* Ex. A, Graveel Dec., ¶ 20.

### 3. TGW is Not a "Discount Store".

As demonstrated above, Plaintiffs' have failed to proffer any credible evidence that GFSI is selling clothing to any of the first five stores mentioned in their Motion. The parties agree, however, that GFSI does sell RTJ apparel to TGW with the RTJ Marks intact. GFSI is able to sell to TGW because it is not a "discount store", and Plaintiffs have failed to meet their burden of proving that it is.

Plaintiffs' acknowledge that the License Agreement does not define "discount stores" at all; but seek to impose their own interpretation of "discount stores" into the License Agreement. *See* Motion at 8. Some type of evidence must be presented in support of Plaintiffs' assertion that TGW is a "discount store", rather than just Plaintiffs' one-sentence determination that it is so based on selected language from TGW's website. Indeed, when determining whether a store constitutes a "discount store" courts will look to the evidence submitted by the parties. *See, e.g., Covington Props. of Lynchburg, Inc. v. G. C. Murphy Co.*, 8 Va. Cir. 353, 354 (Cir. Va. 1987). Without defining the term "discount store", this Court should refrain from granting the extraordinary relief of an injunction until the parties have time to brief the Court, via evidence, on what constitutes a "discount store" for purposes of the License Agreement. This is because the term "discount store" has an "elastic definition", and the Court should look to numerous factors in determining whether TGW is indeed a "discount store". *See Fedtro, Inc. v. Kravex Mfg. Corp.*, 313 F. Supp. 990, 993 (E.D.N.Y. 1970); *In re City Stores Co.*, 9 B.R. 717, 720-21 (B.R. S.D.N.Y.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1981) (herein "*City Stores*"). The failure of the License Agreement to define "discount store" is further reason that this Court should deny Plaintiffs' Motion until further evidence can be obtained defining "discount stores". *See City Stores*, 9 B.R. at 720-21.

In *City Stores*, the lessee was contractually precluded from leasing his premises to a "discount store" but was not prohibited from leasing to a "conventional department store". *See id* at 720. The Court, **after a trial on the issue of what constituted a discount store versus a conventional department store**, determined that the store in question was not a "discount store" but rather a "conventional department store". *See id* at 720-21.

In determining whether a store should be categorized as a "discount store" versus a "conventional department store" the Court looked to six factors: (1) whether the store "is an institutional retailer which carries a wide range of soft and hard lines"; (2) the manner in which the store characterizes itself; (3) whether the store discounts "any dollar amount or percentage from a manufacturer's suggested retail price"; (4) whether the store has multiple departments, and whether any of those departments are serviced departments; (5) whether the store targets "the middle income family shopper"; and (6) who the store regards "as its major competitors." *See id* at 720.

In the instant case, Plaintiffs have failed to offer any credible evidence that speaks to these six issues. Namely, they have not provided any evidence regarding whether TGW carries a wide range of soft and hard lines; how TGW characterizes itself (other than noting that certain items are sold at a discount); how the store determines what to discount; whether TGW has multiple departments, and whether any of those departments are serviced; who TGW's target customer is; nor have they provided evidence regarding who TGW regards as its major competitors. *See id.* Plaintiffs have therefore failed to offer sufficient evidence that TGW is a "discount store" within the meaning of the License Agreement. Plaintiffs' sole evidence regarding their claim that TGW is a "discount store" consists of the Declaration of their attorneys' paralegal, Mary K. Hadley, who testified that she visited TGW's website and found language indicating that TGW is "committed to being your discount retailer of golf equipment and apparel . . . ." *See* Paragraph 5 of Ex. L attached to Plaintiffs' Motion. This "evidence"—which is likely inadmissible hearsay and of

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

questionable legal value—is a far cry from proof that TGW is a "discount store" as that phrase is used in the License Agreement.

This Court should determine that Plaintiffs have failed to meet their burden that they have a probability of success on the merits of their claim because they cannot prove that GFSI is selling to "discount stores". At the very least, this Court should allow the parties to obtain evidence regarding whether TGW is indeed a "discount store" prior to granting the extraordinary relief of an injunction to Plaintiffs.

### B.    Plaintiffs' Have Failed to Prove the Likelihood of Irreparable Harm.

Plaintiffs' cannot demonstrate that they will suffer irreparable harm if their Motion is denied. This is because the alleged harm complained—the sale of defective and non-defective clothing to discount stores bearing the RTJ Marks—is moot. As explained, *supra*, Plaintiffs have not sold any items bearing the RTJ Marks to alleged "discount stores" in over 10 months. Hence, the harm of which Plaintiffs' complain is moot and their Motion should therefore be denied because there is no evidence that GFSI will sell clothing bearing the RTJ Marks to "Secondary Markets" or "discount stores" in the future. *See Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986); *Nissan Motor Co. v. Nissan Computer Corp.*, No. 99-12980, 2007 U.S. Dist. LEXIS 90487, *59 (C.D. Cal. Sept. 21, 2007) (denying injunctive relief because there was no threat of future irreparable harm where defendant engaged in trademark infringement prior to lawsuit but ceased once suit was filed); *See also, Rahoi v. Sirin*, 06-C-691-C, 2007 U.S. Dist. LEXIS 70312, *3 (W.D. Wisc. Sept. 21, 2007), citing, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("To satisfy the Article III case or controversy requirement for requests for injunctive relief, it must appear that the injury about which the petitioner complains is continuing or that the petitioner is under an immediate threat that the injury complained of will be repeated.").

Plaintiffs' failure to demonstrate that they will suffer irreparable harm should this injunction not issue is reason enough for this Court to deny Plaintiffs' Motion regardless of their arguments regarding the merits. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985) ("Under any formulation of the test [for injunctive relief], plaintiff must demonstrate that there exists a significant threat of irreparable injury."). Where plaintiff fails to

demonstrate a significant threat of irreparable injury the Court "need not decide whether it is likely to succeed on the merits." *Id.*

### C. The Balance Of Harms Tips Sharply In GFSI's Favor.

Regardless of whether Plaintiffs have shown serious questions going to the merits of their case, Plaintiffs' still have the burden of demonstrating that the balance of hardships tips sharply in their favor. *See Bernhardt v. County of Los Angeles*, 339 F.3d 920, 930 (9th Cir. 2003). Plaintiffs cannot meet this burden.

In the instant case, Plaintiffs admit that clothing bearing the RTJ Mark "is sitting in bulk bins in Defendants' warehouse." *See* Motion at 24. The parties clearly agree that clothing bearing the RTJ Marks are not selling well. *See* Ex. A, Graveel Dec., ¶¶ 7, 13. GFSI has also demonstrated that it does not sell clothing bearing the RTJ Marks to "discount stores", nor does it sell clothing bearing the RTJ Marks that are either damaged, defective or seconds. Hence, Plaintiffs' have failed to prove that they would suffer any harm whatsoever from the denial of injunctive relief, and certainly cannot prove that the balance of hardships "tip sharply in their favor" as they are required to do.

The only damage that can occur is damage to GFSI should this injunction issue. Paragraph 8 of Plaintiffs' Proposed Order requests that this Court issue an Order declaring:

> Within three (3) days of this Order, Defendant shall provide a copy of this order to all discount stores to which Defendant has sold Licensed Products and issue a 'stop sale request,' requesting that the discount stores comply with this order and cease all sales of Licensed Products until this action is resolved or final judgment is entered by the Court.

*See* Proposed Order, Paragraph 8, Attached to Plaintiffs' Motion.

Should the Court issue this Order, GFSI will likely have to repurchase all clothing historically sold to any store that Plaintiffs deem are "discount stores." If it does this however, GFSI's relationship with those retailers (and GFSI sells many types of apparel that have nothing to do with the RTJ Marks), will suffer irreparably. Moreover, GFSI will likely be liable to a myriad number of stores for breach of contract, and could be liable for restocking fees and other costs associated with requesting all of its retailers to cease selling any products that it purchased bearing the RTJ Marks. Such an order would undoubtedly cost GFSI the good-will it has spent years

developing. If retailers are not sure that they will be able to sell GFSI's products they will hesitate before making any future purchases from GFSI. Even worse, Plaintiffs do not propose a bond in their Proposed Order, which means that there is no guarantee that GFSI will be adequately compensated for their economic losses should they successfully defend this action in trial.

For these reasons, the balance of harms does not tip sharply in Plaintiffs' favor, but rather tips in GFSI's favor.

### D. The Public Policy Would Be Disserved By Issuance Of The Injunction.

"The public interest inquiry primarily addresses impact on non-parties rather than parties. It embodies the Supreme Court's direction that 'in exercising their sound discretion, courts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Bernhardt*, 339 F.3d at 931-32, quoting, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). In the instant case, this Court should deny injunctive relief because the public interest would be disserved by granting injunctive relief on such flimsy evidence. The extraordinary remedy of injunction should be reserved for those cases where the evidence is clearly in the movant's favor. That is not the case here, where the evidence indicates that Plaintiffs' have failed to provide sufficient evidence to justify their request.

For this reason, and those cited above, this Court should deny injunctive relief.

## V. CONCLUSION

WHEREFORE, GFSI requests that this Court deny Plaintiffs' Motion for a Preliminary Injunction, and grant GFSI costs, attorneys' fees and all other relief this Court deems just and equitable.

Dated:   January 3, 2008                    Respectfully submitted,

**BRYAN CAVE LLP**
Jennifer A. Jackson
Robert J. Hoffman
Tarun Mehta


By: /s/ Tarun Hehta
        Tarun Mehta
Attorneys for Defendant
GFSI, INC. d/b/a GEAR FOR SPORTS, INC.

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 120 Broadway, Suite 300, Santa Monica, CA 90401-2305.

On January 3, 2008, I served the foregoing document, described as **OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**, on each interested party in this action, as follows:

## SEE ATTACHED LIST

☒    (BY MAIL) I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Santa Monica, California. I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☐    (BY FEDERAL EXPRESS) I deposited in a box or other facility maintained by Federal Express, an express carrier service, or delivered to a courier or driver authorized by said express carrier service to receive documents, a true copy of the foregoing document, in an envelope designated by said express service carrier, with delivery fees paid or provided for.

☐    (BY FAX) I caused a true copy of the foregoing document to be served by facsimile transmission at the time shown on each transmission report from sending facsimile machine telephone number (310) 576-2200 to each interested party at the facsimile number shown above. Each transmission was reported as complete and without error. A transmission report was properly issued by the sending facsimile machine for each interested party served.

Executed on January 3, 2008, at Santa Monica, California.

☒    (FEDERAL ONLY) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Sherri Gramza
Sherri Gramza

SM01DOCS\663697.1

PROOF OF SERVICE

**SERVICE LIST**

| | |
|---|---|
| Richard Levine<br>Levine & Baker LLP<br>One Maritime Plaza, Suite 400<br>San Francisco, CA 94111 | Attorney for Plaintiffs<br><br>Tel:  (415) 391-8177<br>Fax: (415) 391-8848 |
| Joseph V. Norvell<br>Joeseph T. Kucala<br>Jay M. Burgett, Esq.<br>Norvell IP LLC<br>1776 Ash Street<br>Northfield, IL 60093 | Attorneys for Plaintiffs<br><br>Tel:  (847) 809-2212<br>Fax: (312) 268-5063 |
| Robert J. Hoffman<br>Tarun Mehta, Esq.<br>Bryan Cave LLP<br>3500 One Kansas City Place<br>1200 Main Street<br>Kansas City, MO 64105 | Defendant Co-Counsel<br><br>Tel:  816) 374-3200<br>Fax: (816) 374-3300 |

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

SM01DOCS\663697.1

PROOF OF SERVICE

**PROOF OF SERVICE**
*Robert Trent Jones II, Inc., et al. v. GFSI, Inc.*
Case No.: C07-04913-EDL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My e-mail address is sherri.gramza@bryancave.com.

On January 3, 2008, I caused the following document(s) described as: **OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION,** to be served upon each interested party in this action, as follows:

☒    **VIA ELECTRONIC SERVICE :** By electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have filed a Notice of Consent to Electronic Service in this action.

☒    **FEDERAL ONLY :** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 3, 2008, at Santa Monica, California.

/s/ Sherri Gramza
Sherri Gramza

SM01DOCS\663697.1                                     i
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION