Richard E. Levine (SB #88729)
LEVINE & BAKER LLP
One Maritime Plaza, Suite 400
San Francisco, CA 94111
Telephone: (415) 391-8177
Facsimile: (415) 391-8488
rlevine@levinebakerlaw.com

Joseph V. Norvell (*pro hac vice*)
Joseph T. Kucala (*pro hac vice*)
Jay M. Burgett (*pro hac vice*)
NORVELL IP LLC
1776 Ash Street
Northfield, IL 60093
Telephone: (847) 809-2212
Facsimile: (312) 268-5063
jkucala@norvellip.com

Attorneys for Plaintiffs
ROBERT TRENT JONES II, INC.
ROBERT TRENT JONES LICENSING GROUP, LLC

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT TRENT JONES II, INC. and ROBERT TRENT JONES LICENSING GROUP, LLC<br><br>Plaintiffs,<br><br>v.<br><br>GFSI, INC. d/b/a GEAR FOR SPORTS, INC.<br><br>Defendant. | Case No. 07-CV-04913-SC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: January 25, 2008<br>Time: 10:00am<br>Judge: Samuel Conti |

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................................3

INTRODUCTION ...........................................................................................................................4

ARGUMENT ...................................................................................................................................4

    A.    Defendant Sells Damaged, Defective or Seconds Bearing the RTJ Marks..........................................................................................................................4

        1.    Defendant's Own Practices Support This Assertion ......................................4

        2.    On January 9, 2008, after the Graveel Declaration was Signed, Defendant Sold Damaged, Defective or Seconds Bearing the RTJ Marks ..............................................................................................................5

    B.    Defendant Sells to Discount Stores ..........................................................................6

        1.    The Golf Warehouse is a Discount Store, as Defendant Previously Admitted ........................................................................................6

        2.    Defendant Fails to Deny that it is Selling to Discount Stores Generally, and Defendant Has Sold to Discount Stores Not Specifically Mentioned in Plaintiffs' Motion......................................................8

        i.    Defendant Admitted a Recent Sale to Hockabees ............................................9

        ii.    Defendant Sold RTJ Apparel to Another Discount Store, TJ Maxx ..................................................................................................................9

        iii.    Defendant has Recent Sales through Defendant's Own Outlet Store ..................................................................................................................10

        iv.    Defendant has Recent Sales through Defendant's Dock Sale ..........................10

    C.    Plaintiffs' Request for Injunctive Relief is Not Moot and Defendant Merely Confirms that It Will Not Be Injured by Entry of the Preliminary Injunction................................................................................................10

    D.    Plaintiffs Need Not Introduce Evidence that Defendant is Likely to Infringe Again .........................................................................................................11

    E.    Even if Accepted, Defendant's Evidence Contains Fatal Evidentiary Deficiencies ..............................................................................................................12

        1.    The Graveel Exhibit is Inadmissible................................................................12

        2.    Graveel's Conclusory, Unsupported, Self-Serving Declaration is Insufficient ..................................................................................................14

    F.    Defendant Will Apparently Suffer No Harm Upon Entry of Preliminary Injunction..............................................................................................15

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*E. & J. Gallo Winery v. Consorzio Del Gall Nero*, 782 F.Supp. 457, 468 (N.D. Cal. 1991) ..... 11

*In re City Stores*, 9 B.R. 717 (B.R. S.D.N.Y. 1981) ................................................................... 8

*Lyons P'ship L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001) ..................... 8, 9

*Nissan Motor Co. v. Nissan Computer Corp.*, No. 99-12980, 2007 U.S. Dist. LEXIS 90487, *59 (C.D. Cal. Sept. 21, 2007) ............................................................................................... 11

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259-60 (9th Cir. 1984) ............................ 13

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986). ............... 8, 11

*Rambus, Inc. v. Infineon Techs. Ag*, 348 F.Supp.2d 698 (E.D. Va. 2004) ................................. 13

*Sierra On-line, Inc. v. Phoenix Software, Inc*, 739 F.2d 1415, 1422-23 (9th Cir. 1984) ........... 11

*Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F.Supp.2d 373, 378-79 (S.D.N.Y. 2004) ........................................................................................................................................ 13

*William R. Warner & Co v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924) .................................... 11

**Rules**

Fed. R. Evid. 1006 ....................................................................................................................... 13

Fed. R. Evid. 803(6) .................................................................................................................... 12

## INTRODUCTION

Plaintiffs demonstrated in their initial submission that they satisfy the requirements for a preliminary injunction under the standards in the Ninth Circuit. Defendant's opposition does not seriously challenge Plaintiffs' legal position or their interpretation of the License Agreement. Instead, Defendant's opposition relies upon unsupported assertions that conflict with other evidence. This reply focuses on the following points: (1) Defendant sells damaged, defective or seconds bearing RTJ Marks; (2) Defendant sells apparel bearing RTJ Marks to discount stores; (3) Plaintiffs' request for injunctive relief is not moot; (4) Plaintiffs need not furnish additional evidence; (5) Defendant adduced no competent evidence for the Court to consider; and (6) Defendant admits that it will suffer no harm upon entry of the preliminary injunction with the only exception being the limited economic impact from discontinuing sales to one particular customer, out of hundreds of RTJ apparel customers.

## ARGUMENT

**A. Defendant Sells Damaged, Defective or Seconds Bearing the RTJ Marks**

The sale of damaged, defective or seconds bearing the RTJ Marks is a clear violation of the License Agreement. (Jones Ex. H). Having such damaged, defective or seconds bearing the RTJ Marks in the marketplace causes substantial irreparable harm to the valuable Robert Trent Jones name and mark. (Jones ¶ 30). While Defendant states it "does not sell damaged, defective or seconds bearing the RTJ Marks to any stores without first removing the identifying marks," Plaintiffs' research shows that this is not correct. (Graveel ¶ 20).

**1.    Defendant's Own Practices Support This Assertion**

Defendant artfully stated that it "does not sell damaged, defective or seconds bearing the RTJ Marks to any stores." (Graveel ¶ 20). However, employees for Defendant admitted that damaged, defective or seconds bearing RTJ Marks are stored in bins housing product

intended to be sold to "secondary markets." (Burgett ¶ 16; Zetlmeisl ¶ 26). Defendant's employees also stated that Defendant's practice is to sell the product to "secondary markets" once sufficient bulk accumulated. (Zetlmeisl ¶ 27; Burgett ¶ 17). Mr. Zetlmeisl (Plaintiffs' auditor) and Mr. Burgett (Plaintiffs' attorney) conducted a financial review of Defendant during August 28th and 29th, as permitted under the License Agreement. (Zetlmeisl ¶ 2; Burgett ¶ 2). During this review, Messrs. Zetlmeisl & Burgett viewed damaged, defective or seconds bearing the RTJ Marks in these storage bins. (Zetlmeisl ¶ 26; Burgett ¶ 16). During this review, Messrs. Zetlmeisl & Burgett were informed that Defendant holds a weekly dock sale at its corporate headquarters ("Dock Sale") open to the public and employees. (Supplemental Declaration of Thomas B. Zetlmeisl ("Zetlmeisl Supp.") ¶ 5; Supplemental Declaration of Jay M. Burgett ("Burgett Supp.") ¶ 4). At the Dock sale, Defendant sells RTJ branded product from these storage bins at discount prices. (Zetlmeisl ¶ 6; Burgett ¶ 5). Although Mr. Graveel's declaration ("Graveel Dec.") states that Defendant "does not sell damaged, defective or seconds bearing the RTJ marks to any stores without first removing the identifying marks," during their visit to Defendant's facilities, Messrs. Zetlmeisl & Burgett were told by Defendant's representatives that they were not aware of any removal process. (Graveel ¶ 20; Burgett ¶ 19; Zetlmeisl ¶ 29). Defendant provides no further information regarding this removal process, such as, who removes the RTJ marks, when it takes place, how the marks are removed, where the "de-labeled" product is sold, etc. Defendant's own practices do not support its claim that it does not sell damaged, defective or seconds bearing RTJ Marks.

    **2.**    **On January 9, 2008, after the Graveel Declaration was Signed, Defendant Sold Damaged, Defective or Seconds Bearing the RTJ Marks**

On January 9, 2008, Jimmy D. Kidd visited Defendant's Dock Sale to purchase apparel bearing the RTJ Marks. (Declaration of Jimmy D. Kidd ("Kidd") ¶ 3). While the Dock Sale on

this particular day, was supposed to be open to GFSI employees only, the GFSI employee allowed Mr. Kidd into the Dock Sale to purchase apparel anyway. (*Id*. at ¶¶ 3-4). Mr. Kidd then proceeded into the Dock Sale and purchased eleven shirts with RTJ Marks, at extremely discounted prices. (*Id*. at ¶¶ 5-10, Ex. 1).   Photographs of these shirts show the RTJ Marks and quality defects, such as gross discoloration. ( *Id*. at ¶ 11, Exs. 1-2).  Another employee of Defendant employee stated that when Dock Sale is open to the public, there is usually additional RTJ apparel for sale.  (*Id*. at ¶ 8).  An additional review of these shirts indicates the product to be defective, irregular, or seconds due to fabric discoloration. (Supplemental Declaration of Mary K. Hadley ("Hadley Supp.") ¶¶ 19-20, Ex. 19).  Thus, Defendant sold damaged, defective and second product bearing the RTJ Marks after Mr. Graveel executed his declaration.  Moreover, without a clear judicial decree there is nothing to prevent discount sellers located near Defendant, such as Hockabees, from purchasing similar damaged, defective or seconds bearing the RTJ Marks.  (Hadley Ex. A).

**B.  Defendant Sells to Discount Stores**

    **1.     The Golf Warehouse is a Discount Store, as Defendant Previously Admitted**

The Court, of course, need not find absolutely that The Golf Warehouse ("TGW") is a discount store, only that Plaintiffs have probable success on the merits of their claims and a likelihood of irreparable injury, such injury being presumed in the trademark infringement context. *Goto.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1205 (9th Cir. 2000).  The parties agree that Defendant is currently selling to TGW, and Defendant intends to continue selling to TGW in the future.  Accordingly, the only issue is whether TGW is a discount store.  However, there can be little dispute on this issue, as Defendant's own documents refer to TGW as a discount store.

1   As stated in Plaintiffs' original brief, Defendant submitted a Marketing, Distribution,

2   Financial and Quality Plan Outline ("Defendant's Marketing Plan") to RTJ2 in late June 2007.

3   (Jones Supp. ¶ 5, Ex. C). Defendant's Marketing Plan states:

4   Below is a list of the top 10 accounts for RTJ Apparel sales in 2007.  Three of the top ten are accounts which are considered discounters.  The top account is Steinmart a discount retailer.

| RTJ GOLF TOP 10 ACCOUNTS | | |  |
|---|---|---|---|
| Sales through 6-12-07 | | | |
| Customer Number + Name | FY 2007 YTD Net Sales + Open | % To Total | |
| 20563, STEIN MART INCORPORATED  GF | 100,515 | 6% | Secondary Market Account |
| 22263, THE GOLF WAREHOUSE LLC | 72,588 | 4% | Secondary Market Account |
| 2935, TOURNAMENT PLAYERS CLUB | 65,602 | 4% | |
| 22835, HAROLD STORES INC  GO | 58,199 | 4% | |
| 21589, NEIMAN MARCUS  GF | 53,176 | 3% | Secondary Market Account |
| 6151, KEMPER SPORTS MANAGEMENT INCORPORATED | 43,826 | 3% | |
| 1384, TROON GOLF MANAGEMENT | 42,776 | 3% | |
| 3126, THE BOULDERS CLUB | 31,527 | 2% | |
| 1628, KAPALUA LAND COMPANY LTD | 27,688 | 2% | |
| 10364, SKIPPERS HOOK MARINA | 23,977 | 1% | |
| TOP 10 SUB TOTAL | 519,873 | 32% | |

(*Id*.)  The Golf Warehouse, Defendant's second largest customer in FY 2007, is designated by Defendant as a "discounter" and "Secondary Market Account," just like Stein Mart (Defendant's top account), which Defendant admits is a discount seller. (*Id*.) Likewise, the TGW pricing data provided to Mr. Zetlmeisl reflects pricing similar to other discount stores. (Zetlmeisl ¶ 10).  Now, six months later, Graveel signed a declaration stating "GFSI believes The Golf Warehouse is properly considered a Golf Specialty Store, not a 'discount' or 'Secondary-Market' store." (Graveel ¶ 17.)  TGW may specialize in golf-related products, but the fact remains that TGW is a discount store. Whether TGW is a "golf specialty" discount store is irrelevant.

In fact, TGW makes no bones about being a discount store.   TGW characterizes itself as "being your **discount** retailer for golf equipment and apparel over the Internet."  (Hadley ¶ 5, Ex. G, emphasis supplied).    TGW's website describes the "TGW Low Price Guarantee" stating "Find a lower price and we will match it!" (Hadley Supp. ¶ 3, Ex. 1).    TGW's description of its pricing indicates that it sells product below the suggested retail price ("SRP")

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

7

and the SRP serves "as a benchmark by which to compare [its] discounts from SRP." (Hadley Supp. ¶ 4, Ex. 2).

Defendant's reliance on a bankruptcy court's decision in, *In re City Stores*, 9 B.R. 717, 720 (B.R. S.D.N.Y. 1981), to create a six-factor definition for a "discount store" is nothing more than a rhetorical sleight-of-hand. Indeed, Defendant does not even bother to try and assess TGW in light of any of the six *City Stores* factors. This is probably because TGW's own website and other material support the conclusion it is a discount store. In considering the *City Stores* factors, Plaintiffs submit: (1) TGW is not a conventional, brick and mortar, department store, like Sears, but an Internet golf retailer; (2) TGW characterizes itself as a "discount retailer;" (3) TGW's low price match guarantee and price policy suggests that it sells substantially below the MSRP; (4) TGW focuses exclusively on the sale of golf equipment and apparel; (5) TGW targets discount Internet shoppers; and (6) its competitors are likely other Internet discount retailers, such as www.golfdiscount.com and www.rockbottomgolf.com. (Hadley Supp. ¶¶ 2-14, Exs.1-14). Therefore, the Court should accept TGW's self-characterization as a discount store, and Defendant's own admission that TGW is a "discounter" and "Secondary Market" seller, no different than Stein Mart.

2. **Defendant Fails to Deny that it is Selling to Discount Stores Generally, and Defendant Has Sold to Discount Stores Not Specifically Mentioned in Plaintiffs' Motion**

Where a defendant claims to have ceased infringing conduct, it is under a heavy burden and must irrefutably demonstrate its reform. *Lyons P'ship L.P. v. Morris Costumes, Inc*., 243 F.3d 789, 800 (4th Cir. 2001) (affirming injunction where defendant failed to "make an affirmative showing that continuing infringement was, practically speaking, nearly impossible"); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (quoting J. Thomas McCarthy, McCarthy on Trademarks § 30.11 4th ed. (2007)). Otherwise, "they would simply be free to 'return to [their] old ways' after the threat of a lawsuit has

passed." *Lyons P'ship*, 243 F.3d at 800 (quoting *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 71-72 (1983)).

Here, there is no credible evidence supporting Defendant's statement that it has ceased sales to discount stores. Defendant submits no sworn statement that it will not continue or resume sales to discount stores in the future. It merely claims (without evidence) to have ceased such sales to certain discount stores, not to discount stores in general. Instead, Plaintiffs' evidence shows Defendant has continued to sell to discount stores over the past year, including its own discount store, as described below. The financial data supplied to Plaintiffs by Defendant is limited to sales through July 31, 2007, so it is uncertain what sales Defendant made beyond that date. (Zetlmeisl ¶ 18). Plaintiffs, of course, seek to enjoin Defendant from selling product bearing the RTJ Marks to discount stores in general (in accordance with the terms of the License Agreement). This motion is not about a few stores that the Defendant would focus on.

### i. Defendant Admitted a Recent Sale to Hockabees

By its own admission, Defendant sold apparel with RTJ Marks to Hockabees at least as recent as late October 2007. (Graveel ¶ 16, Ex. A). Defendant claims such sales were inadvertent, but there is no reason for Plaintiffs to suffer the irreparable harm caused by Defendant's "errors." (*Id.*). Moreover, Hockabees continues to advertise for sale almost 50 items of apparel bearing the RTJ Marks, including "brand new apparel." (Hadley Supp. ¶¶ 15-16, Exs. 15-17).

### ii. Defendant Sold RTJ Apparel to Another Discount Store, TJ Maxx

Contrary to what Defendant would lead the Court to believe, Defendant has sold apparel with RTJ Marks to one of the nation's leading discount stores, TJ Maxx. There is no mention

that Defendant ceased sales to this entity and, in fact, Defendant continued to sell to this entity, based on evidence provided in August, through at least April 2007. (Zetlmeisl Supp. ¶ 7). Moreover, the Graveel Declaration describes a prior communication between Graveel and RTJ2 regarding the sale of RTJ apparel to discounters, including "off-price" stores, such as TJ Maxx, Stein Mart and Sym's Corporation. (Graveel ¶ 9). Graveel later states "to accommodate RTJ2's request, we ceased selling to these alleged 'discount stores' when RTJ2 raised concerns." (*Id*.). Noticeably absent from the exhibit supporting Graveel's declaration and Defendant's brief is any mention of sales made to TJ Maxx, despite Graveel's grouping of TJ Maxx with other discount stores. (*Id*., Ex. A).

### iii.  Defendant has Recent Sales through Defendant's Own Outlet Store

In late August 2007, Messrs. Zetlmeisl & Burgett visited Defendant's Outlet Store in Lenexa, Kansas, as part of Plaintiffs' financial review of Defendant. (Zetlmeisl Supp. ¶ 3; Burgett Supp. ¶ 3). As viewed by Messrs. Zetlmeisl & Burgett, Defendant's Outlet store offers for sale apparel bearing the RTJ marks at discount prices. (*Id*.). Defendant's own financial documents identify sales to this entity and classify it as a "Secondary Market." (Zetlmeisl Supp. ¶ 4). Therefore, Defendant is selling apparel with RTJ Marks to its own discount store.

### iv.  Defendant has Recent Sales through Defendant's Dock Sale

As detailed *supra*, Defendant's weekly Dock Sale is open to the public and employees selling RTJ branded product at discount prices. (Zetlmeisl Supp. ¶¶ 5-6; Burgett Supp. ¶ 4-5).

**C. Plaintiffs' Request for Injunctive Relief is Not Moot and Defendant Merely Confirms that It Will Not Be Injured by Entry of the Preliminary Injunction**

Defendant's opposition brief is the first time Plaintiffs were informed that any infringing conduct was allegedly ceased. (Jones Supp. ¶ 6). During the June and July exchanges between the parties, Defendant never mentioned it ceased sales to any discount stores. (*Id.*). Defendant never told Messrs. Zetlmeisl & Burgett that it ceased sales to discount

stores during the financial review in late August. (Burgett Supp. ¶ 7; Zetlmeisl Supp. ¶ 9). Yet Defendant (on the basis of no admissible evidence) now suggests that this motion is moot because it ceased sales to discount stores. The suggestion would be without merit even if it were accurate, which it is not. *Sierra On-line, Inc. v. Phoenix Software, Inc*, 739 F.2d 1415, 1422-23 (9th Cir. 1984) (affirming preliminary injunction where the defendant "voluntarily stopped using the disputed term"). To support its position, Defendant relies upon the court's decision in *Nissan Motor Co. v. Nissan Computer Corp.*, No. 99-12980, 2007 U.S. Dist. LEXIS 90487, *59 (C.D. Cal. Sept. 21, 2007), where the court denied a permanent injunction because defendant ceased the infringing conduct nearly eight years ago. *Id*. Unlike the situation in *Nissan*, Defendant's conduct is recent and ongoing. Moreover, even if Defendant's assertion is correct, it will merely affirms that Defendant will not suffer any harm by the entry of the preliminary injunction.

**D. Plaintiffs Need Not Introduce Evidence that Defendant is Likely to Infringe Again**

The Ninth Circuit does not require Plaintiffs "also to introduce concrete evidence that the defendants are likely to infringe again." *Polo Fashions,* 793 F.2d at 1135-36. The Supreme Court stated long ago in *William R. Warner & Co v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924) "a trademark plaintiff 'entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted." Similarly, the Northern District of California in *E. & J. Gallo Winery v. Consorzio Del Gall Nero*, 782 F.Supp. 457, 468 (N.D. Cal. 1991) enjoined the defendant even after it voluntarily discontinued use of the mark because defendant's "past conduct does not reasonably ensure continued adherence to its present position." *Id*. at 468-471. The court concluded that "even if the Court

does [defendant] a disservice in reaching this conclusion, issuance of the injunction will not likewise do [defendant] any harm." *Id*. While Plaintiffs are under no obligation to prove that violative conduct will certainly continue to occur, they have sufficiently established, through this motion, that Defendant's conduct and statements do not "reasonably ensure continued adherence."

**E. Even if Accepted, Defendant's Evidence Contains Fatal Evidentiary Deficiencies**

The only evidentiary submission Defendant offers in opposition to Plaintiffs' motion is the self-serving declaration of its president, Larry Graveel ("Graveel Declaration"). Attached to the Graveel Declaration is a single six page exhibit ("Graveel Exhibit") apparently comprising material drawn from other documents which Mr. Graveel (without foundation or authentication) claims evidence the extent of sales to only six of Defendant's customers. As a matter of law, neither the Graveel Declaration, nor six page Graveel Exhibit are effective even to put in issue, let alone overcome, Plaintiffs' evidence.

**1.   The Graveel Exhibit is Inadmissible**

Graveel declares that he has "reviewed the sales data for GFSI's distribution of RTJ apparel to the retailers listed in the supporting papers filed by RTJ2. Spreadsheets that accurately show that data are attached to this Declaration as Exhibit A." (Graveel ¶ 11). Graveel **does not declare** that documents in the Graveel Exhibit are documents kept in the ordinary course of business (as opposed, for example, to having been prepared specifically for this motion), and Graveel **does not** declare that he is the custodian either of the "sales data" he refers to, or of the documents comprising the Graveel Exhibit. Nor does Graveel explain how, when, by whom, or for what purpose the Graveel Exhibit was created. The data compilation of a business entity is inadmissible hearsay unless it meets the requirements of Fed. R. Evid.

803(6), governing the admission of "records of a regularly conducted activity."[1]  Merely proffering material that looks like a "business record," or a summary compiled from a business record, does not avoid the preliminary requirement that a party authenticate the documents it seeks to admit.  Therefore, the Graveel Declaration in authenticating such material must specify the basis for his knowledge of record-keeping practices, must demonstrate that the material meets the "time of making" requirement of Rule 803(6), and must clearly state that the records were made by regularly conducted activity as a matter of regular practice.  *See Rambus, Inc. v. Infineon Techs. Ag*, 348 F.Supp.2d 698 (E.D. Va. 2004) (analyzing the submitted declarations under Fed. R. Evid. 803(6)).  The Graveel Declaration does not even attempt to establish these foundational requisites.  Nor can the Graveel Exhibit come in as a summary under Fed. R. Evid. 1006.  Before summaries are admissible, there must be an adequate showing the source material is, itself, admissible.  *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259-60 (9th Cir. 1984).

An identical evidentiary issue was presented in a summary judgment proceeding in *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F.Supp.2d 373, 378-79 (S.D.N.Y. 2004).  Tradax attempted to establish its damages in documents attached to the declaration of its president, but the court refused to admit the documents as potentially unreliable because "[The president's] affidavit merely identifies the relevant documents, without explaining whether they were kept in the ordinary course of business; there is no other affidavit from a document custodian." *Id*.  Who prepared the Graveel Exhibit?  From what material was it drawn?  When?  Was either the Graveel Exhibit or the material (if any) from which it was drawn kept in the ordinary course of Defendant's business?  Defendant adduces no evidence on these issues.

---

[1] Graveel also offers second hand (alleged) statements of unnamed "Corporate representatives at Neiman Marcus LC" that also amount to inadmissible hearsay. (Graveel ¶ 13).

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

**2.    Graveel's Conclusory, Unsupported, Self-Serving Declaration is Insufficient**

Mr. Graveel is the President of Defendant, GFSI. (Graveel ¶ 2). He is not, however, the GFSI manager in charge of brand management, product development, or sales of RTJ apparel. Those individuals are Ms. Angela Resch, Mr. Tim Conlin, and Mr. Jim Malseed, respectively. (Jones Ex. J). The Graveel Declaration offers no information as to how he comes to know any of the factual conclusions he sets forth in his declaration. Other than stating that he is the "president" and that he has "reviewed the sales data" (with no specificity or particularization as what that "sales data" is), Graveel makes no attempt to lay a foundation for his statements. (Graveel ¶¶ 2 & 11). His representations are hearsay. They are offered for the proof of the matter stated. He neither produces nor describes with any particularity the material he allegedly reviewed nor does he explain how that material (whatever it is) leads him to the conclusions sworn to. As a result, the inconsistent, self-serving and conclusory Graveel Declaration is without foundation and, therefore, insufficient to refute Plaintiffs' support.

Even if the Graveel Exhibit were admissible (which it is not), it would contradict the sworn statements of Mr. Graveel, and suggest a lack of reliability not only of the Graveel Exhibit, but of the Graveel Declaration itself. Mr. Graveel states that *after* "discussions with RTJ2 in the summer of 2007," GFSI, "to accommodate" RTJ2's concern that GFSI was selling RTJ branded product to discount stores, "ceased selling to these alleged 'discount stores.'" (Graveel ¶ 9). But the proffered Graveel Exhibit suggests that there were no sales to Stein Mart or Neiman Marcus post-September 2006, and no sales to Syms Corp. post-October 2006. (Graveel ¶¶ 12-14, Ex. A). Yet, Mr. Graveel swears that such sales ceased as an accommodation to RTJ2 later than the summer 2007. (Graveel ¶ 9). That cannot be true. And of course, even if Defendant has stopped selling to some discount stores, as discussed above, it has avoided discussing, or has mischaracterized, its other discounted sales, which Defendant either does not mention (TJ Maxx), or claims are not discount stores (The Golf Warehouse).

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

14

**F. Defendant Will Apparently Suffer No Harm Upon Entry of Preliminary Injuction**

The Ninth Circuit stated "[I]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [Plaintiff] substantial protection of its trademark." *Polo Fashions,* 793 F.2d at 1135-36. Thus, if Defendant's claim to have ceased sales to discount stores, except The Golf Warehouse, is credited, it will suffer no substantial harm upon entry of the injunction. Any alleged harm to Defendant is limited to its sales to TGW and is purely economic in nature. Plaintiffs do not object to the posting of a reasonable bond and will do so should the Court find it necessary or appropriate; but any such bond should be limited in light of Defendant's contention that the only discount store it is selling to is TGW.

## CONCLUSION

Defendant's opposition supports the fact that Plaintiffs have both a high probability of success on the merits and serious likelihood of irreparable injury. Defendant effectively admits it is selling outside the License granted by the License Agreement – and it asserts a right to continue so doing. For the reasons set forth above, as well as the reasons set forth in Plaintiffs' initial submissions, it is respectfully urged that the Court grant this motion and preliminarily enjoin Defendants in accordance with the Proposed Order offered by Plaintiffs.

Respectfully submitted,

Dated: _____   _____

Richard E. Levine (SB #88729)
LEVINE & BAKER LLP

Joseph V. Norvell (*pro hac vice*)
Joseph T. Kucala (*pro hac vice*)
Jay M. Burgett (*pro hac vice*)
NORVELL IP LLC

Attorneys for Plaintiffs
ROBERT TRENT JONES II, INC.
ROBERT TRENT JONES LICENSING
GROUP, LLC