# Exhibit A

Richard E. Levine (SB #88729)
LEVINE & BAKER LLP
One Maritime Plaza, Suite 400
San Francisco, CA  94111
Telephone:  (415) 391-8177
Facsimile: (415) 391-8488
rlevine@levinebakerlaw.com

Joseph V. Norvell (*pro hac vice*)
Joseph T. Kucala (*pro hac vice*)
Jay M. Burgett (*pro hac vice*)
NORVELL IP LLC
1776 Ash Street
Northfield, IL  60093
Telephone:  (847) 809-2212
Facsimile:  (312) 268-5063
jkucala@norvellip.com

Attorneys for Plaintiffs
ROBERT TRENT JONES II, INC.
ROBERT TRENT JONES LICENSING GROUP, LLC

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBERT TRENT JONES II, INC. and ROBERT TRENT JONES LICENSING GROUP, LLC<br><br>                    Plaintiffs,<br><br>         v.<br><br>GFSI, INC. d/b/a GEAR FOR SPORTS, INC.<br><br>                    Defendant. | **Case No. 07-CV-04913-SC**<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE** |

**INTRODUCTION**

On February 4, 2008, the Court issued its Order denying Plaintiffs' Motion for Preliminary Injunction ("Order").  The Order determined that Plaintiffs failed to establish: (1) a

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING  PLAINTIFFS'  MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

1

1  combination of probable success on the merits and the possibility of irreparable harm; or (2) that
2  serious questions are raised and the balance of hardships tips in their favor.  Plaintiffs move the
3  Court for reconsideration of the Order on the following grounds: (1) the Court manifestly failed
4  to consider material facts and dispositive legal arguments by incorrectly concluding Plaintiffs are
5  not suffering irreparable harm; (2) Plaintiffs submit that there is a material difference in fact
6  from that which was presented to the Court regarding Plaintiffs' knowledge of the irreparable
7  harm; and (3) the Court manifestly failed to consider material facts supporting the claim that The
8  Golf Warehouse is a discount store.  In addition, Plaintiffs request an oral hearing before the
9  Court to provide further testimony and leave to submit additional evidence supporting their
10 claims and arguments, including evidence on the definition of a discount store.

**PROCEDURAL HISTORY**

On December 3, 2007, Plaintiffs filed their Motion for Preliminary Injunction.  (Docket No. 11).  Plaintiffs' Motion sought to preliminarily enjoin Defendant from two destructive activities: (1) the sale of apparel bearing the "Robert Trent Jones" trademark to discount stores; and (2) the sale or distribution of damaged, defective, seconds or non-conforming apparel bearing the "Robert Trent Jones" trademarks to any person or entity without first removing said trademarks.  On January 3, 2008, Defendant filed its Opposition to Plaintiffs' Motion for Preliminary Injunction and Plaintiffs filed their Reply in Support of Motion for Preliminary Injunction on January 11, 2008.  (Docket Nos. 36 & 39).  On January 24, 2008, the Court held an oral hearing on this Motion ("Hearing") and the parties submitted oral arguments and testimony.  Finally, on February 4, 2008, the Court entered the Order denying Plaintiffs' Motion for Preliminary Injunction with respect to the first activity, but did not opine on the second activity for which an injunction was also sought.  (Docket No. 50).

**ARGUMENT**

**I. Plaintiffs Respectfully Request that the Court Reconsider the Order Denying Plaintiffs' Motion for Preliminary Injunction.**

MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING  PLAINTIFFS'  MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE

2

**A. Plaintiffs' Request for Reconsideration Is Appropriate.**

As the Court is aware, Plaintiffs are not required to conclusively prove that Defendant is selling apparel bearing the Robert Trent Jones trademarks ("RTJ Apparel") to discount stores, nor do they need to conclusively prove they are suffering irreparable harm. The "sliding scale" approach adopted by the Ninth Circuit provides flexibility in what the Plaintiffs must show. *Dr Seuss Enterprises, L.P. v. Penguin Books USA, Inc*., 109 F.3d 1394, 1396-97 fn. 1 (9th Cir. 1997) (quoting *Big Country Foods, Inc. v. Board of Educ*., 868 F.2d 1085, 1088 (9th Cir. 1989)). As demonstrated below, Plaintiffs believe their evidence, when properly considered, clearly showed that they are entitled to the requested relief.

The Local Rules of the Northern District of California provide three separate grounds for a motion for reconsideration. Local Rule 7-9(b). The grounds are as follows:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order and reasonable diligence was applied but the fact or law was not known at time of interlocutory order;
> (2) Emergence of new material facts or change of law occurring after the time of such order; OR
> (3) Manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before the interlocutory order.

Plaintiffs' present request for reconsideration is dependent upon grounds (1) & (3), as further detailed below.

**B. The Court Incorrectly Concluded that Plaintiffs Are Not Suffering Irreparable Harm.**

**1. As a Matter of Law, Plaintiffs Are Suffering Irreparable Harm.**

The Court failed to consider dispositive legal arguments concerning irreparable harm, which were presented to the Court before the interlocutory order. Local Rule 7-9(b)(3). Plaintiffs' evidence included, among other things, the Declaration of Robert Trent Jones, Jr., wherein Mr. Jones stated, "The sale of golf apparel bearing the Robert Trent Jones brand to

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

3

1  discount stores damages my brand and goodwill that I worked hard to develop." (Docket No. 16,
2  ¶ 30). In addition, the Court properly recognized Defendant's express admission of the harm
3  being done to Plaintiffs' brand, namely, "I continue to express my opinion that having your
4  brand in those stores in significant quantities over time is not a good thing for your brand image
5  and not a good thing for my profitability, so we are both negatively impacted." (Order p.13)
6  Despite this evidence and Defendant's express admission of harm, the Order concludes "That
7  sales in certain markets may be bad for the RTJ brand image is not inherently the same as
8  irreparable harm." (Order p.13). This conclusion is in direct contravention to the law.
9        The Court erroneously concluded that Mr. Graveel's admission does not demonstrate
10 irreparable harm. First, the RTJ brand is a trademark, as "brand is used interchangeably with
11 'trademark' in many industries." 1 J. Gilson, Gilson on Trademarks § 1.02[d][1] (2007). A
12 trademark symbolizes or represents a company's reputation or goodwill. 1 J.T. McCarthy,
13 Trademarks and Unfair Competition §2.7 (2d ed. 1984); 1 J. Gilson, Gilson on Trademarks
14 §1.03[5] (1990) ("[Trademarks] are inextricably bound up with [good will], and they are
15 protected *because* of it." (emphasis in original)); *Sunbeam Corp. v. Payless Drug Stores*, 113 F.
16 Supp. 31, 45 (N.D. Cal. 1953) (a "trademark symbolizes business good will."); *Glow Ind. v.
17 Lopez*, 273 F.Supp.2d 1095, 1107 (C.D. Cal. 2003) ("'A trademark . . . is merely the symbol by
18 which the public recognizes that reputation and hence has no independent significance apart
19 from the owner's good will.'") (quoting *Dial-A-Mattress Operating Corp. v. Mattress Madness,
20 Inc.*, 841 F. Supp. 1339, 1350 (E.D.N.Y. 1994)).
21       Second, it is a long established principle that, by its very nature, injury to goodwill and
22 reputation is not easily measured or fully compensable in damages. *Rent-A-Car, Inc. v. Canyon
23 Tele. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("Intangible injuries, such as
24 damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *STX, Inc. v.
25 Trik Stik, Inc.*, 708 F.Supp. 1551, 1560 (N.D. Cal. 1998) ("Damage to an intangible value such as

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

4

reputation and goodwill can never be accurately ascertained."). Therefore, any harm to the RTJ brand is an injury to Plaintiffs' reputation and goodwill, which is not easily measured or fully compensable by monetary damages. The Hearing transcript will further show that the Court incorrectly believed it was likely that monetary damages would adequately address any harm suffered by Plaintiffs regarding Defendant's sale of RTJ apparel to The Golf Warehouse.[1] As detailed above, such an injury is irreparable and monetary damages are insufficient.

Contrary to the Court's opinion, harm or injury to goodwill or reputation is not easily measured or fully compensable in damages. *See Rent-A-Car, Inc.*, 944 F.2d at 603; *STX, Inc.*, 708 F.Supp. at 1560. As the Court has already concluded that Defendant's sales "may be bad for the RTJ brand image," the Court must find, as a matter of law, that Plaintiffs are suffering irreparable harm.

**2. The Court Incorrectly Concluded that Plaintiffs Knew of the Irreparable Harm Prior to June 2007.**

The Order states,

> Jones claims that he was unaware of the extent of these sales until he received a letter describing these customers in July 2007, see Pls. Ex. 4, and that he immediately sought to stop GFSI from making further sales. Jones himself may not have known about the prior sales, but Graveel testified that GFSI disclosed all of these sales to Tali Jones, another RTJ2 executive, during regular meetings. Further, Jones knew that RTJ2 was selling some merchandise to these stores, but not the extent of the sales.[2]

(Order p. 10). The Hearing transcript will reflect two points: (1) no more than an unfounded opinion of Mr. Graveel that Mrs. Tali Jones knew of Defendant's sales to discount stores prior to June 2007; and (2) that Mr. Jones testified that he did not know of the sales, let alone the extent

---

[1] Plaintiffs will supplement this brief, with citations to the Hearing transcript, once the official transcript is available.

[2] The Order contains a typographical error and should read "…Jones knew that Defendant was selling…."

---

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

5

1  of the sales, of RTJ Apparel to discount stores prior to June 2007.  The Court either
2  misunderstood or misinterpreted the testimony presented.
3        According to the Order, Mr. Graveel testified that "GFSI disclosed all of these sales to
4  Tali Jones." (Order p. 10).  Based upon this testimony, the Court concluded or presumed that
5  Mrs. Jones in fact had such knowledge.  Mr. Graveel lacks personal knowledge of Mrs. Jones'
6  knowledge and is not a competent witness to attest to such knowledge. *See* Rule 602 of the
7  Federal Rules of Civil Procedure.  Therefore, the Court should not presume Mrs. Jones'
8  knowledge based upon Mr. Graveel's testimony and such a presumption does not reflect the
9  record.
10       Plaintiffs now submit the Declaration of Mrs. Taliaferro Jones ("Mrs. Jones").  Mrs.
11 Jones, who was unavailable to attend the Hearing for medical reasons, is a Member and partial
12 owner of Robert Trent Jones Licensing Group, LLC ("RTJ2 Licensing").  (Mrs. Jones ¶¶ 4 &5).
13 Simply stated, prior to June 2007, Plaintiffs had *no* knowledge of Defendant's sales of RTJ
14 Apparel to Stein Mart, Hockabees, Neiman Marcus Last Call, Gabriel Brothers, Syms, TJ Maxx
15 and The Golf Warehouse. (Docket No. 16 ¶ 30; Mrs. Jones ¶ 7).  Furthermore, it was only in
16 June 2007 that Mrs. Jones received information regarding Defendant's sales of RTJ apparel to
17 discount stores and this information was limited to Defendant's sales to Stein Mart, The Golf
18 Warehouse and Neiman Marcus Last Call, and did not include information on Defendant's sales
19 to Gabriel Brothers, TJ Maxx, Syms, and Hockabees.  (Mrs. Jones ¶¶ 10-11).
20       Furthermore, Defendant offered no documents to support its position that it disclosed all
21 of these sales to Mrs. Jones.  Defendant's lack of documentary support and the statements of Mr.
22 Jones and Mrs. Jones (contrary to Mr. Graveel's unfounded opinion and unreliable testimony)
23 establish that Plaintiffs were unaware of Defendant's sale of RTJ Apparel to these stores prior to
24 June 5, 2007 and that Plaintiffs acted reasonably and within a reasonable time upon learning of
25

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

6

1  such sales. (Docket No. 16, ¶ 30; Mrs. Jones ¶¶ 7-8).  Defendant's arguments and the Court's

2  conclusion to the contrary are incorrect.

3       As detailed above, the Court failed to consider material facts presented before it.  Also,

4  there is a material difference in fact from that which Mr. Graveel presented to the Court and that

5  Plaintiffs now submit through the testimony of Mrs. Jones, who was unavailable at the time of

6  the Hearing. (Mrs. Jones ¶ 4).   As a result, Plaintiffs have not delayed in seeking this relief and

7  continue to suffer irreparable harm.

**C. Court Improperly Excluded Plaintiffs' Parol Evidence Regarding the Definition of Discount Stores.**

Although the Court defined the key issue as whether The Golf Warehouse is a discount store, the Court manifestly failed to consider the Plaintiffs' parol evidence presented to the Court showing The Golf Warehouse as a discount store.  (Order p. 7).  As the Court admits in its Order, "Plaintiffs repeatedly asserted that they had substantial evidence proving conclusively that TGW is a discount store, including print-outs of pages from TGW website, but offered no parol evidence supporting their definition." (Order p. 9)  Thus, the Court failed to consider the following parol evidence on the definition of a discount store:

- Declaration of Mary K. Hadley and exhibits showing The Golf Warehouse's own characterization of itself as a "discount retailer" (Docket No.17); and

- Supplemental Declaration of Mary K. Hadley and exhibits showing The Golf Warehouse's own characterization of itself as a "discount retailer" (Docket No. 39, #5).

Plaintiffs respectfully submit that the foregoing declarations, which show that The Golf Warehouse characterizes itself as a discount retailer, were proper parol evidence the Court should have considered when determining whether or not The Golf Warehouse is a discount store. *Adobe Systems Inc. v. One Stop Micro, Inc.*, 84 F.Supp.2d 1086, 1091-92 (N.D. Cal. 2000) (relying on extrinsic evidence including Plaintiff's declarations to determine that agreement under which software was distributed was licensing agreement).

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING  PLAINTIFFS'  MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

7

Additionally, the Order cites to *Kennecott Corp. v. Union Oil Co.*, 242 Cal. Rptr. 403, 410 (Ct. App. 1987) for the proposition that "the conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions." The Court failed to consider the following material facts presented to it:

- Excerpts of 2007 GFSI's *own* Marketing, Distribution, Financial and Quality Plan identifying The Golf Warehouse as a "discounter" and "Secondary Market account" (Docket No. 39 #4, Ex. C);
- Defendant's Secondary Market Policy, submitted as Plaintiffs' Exhibit 1 in the Hearing, a copy of which is attached as Exhibit 1;
- Plaintiffs' Reply brief and supporting exhibits analyzing The Golf Warehouse as a discount store under the definition proposed by Defendant in its Opposition papers (Docket Nos. 36 & 39);
- Declaration of Thomas Zetlmeisl and exhibits regarding Mr. Zetlmeisl's review of Defendant's financial records regarding sales to The Golf Warehouse and other discount stores (Docket Nos. 19 & 49); and
- Defendant's Original Business Plan (Docket No. 16, Ex. G).

The Order fails to mention this uncontested parol evidence. It is respectfully suggested that such evidence precludes the result that RTJ2 has not shown a probable success on the merits.[3] Indeed, when considered (in light of the applicable authorities addressing the weighing of

---

[3] The Court Order states "RTJ2 has failed to make the required showing that it is likely to succeed on the merits." (Order p. 11). The proper standard in the Ninth Circuit is whether or not Plaintiffs have shown probable success on the merits and the possibility of irreparable harm; or that serious questions are raised and the balance of hardships tips in its favor. *A&M Records V. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

8

evidence in a trademark licensing matter) this evidence also establishes that Plaintiffs have a probable success on the merits that Defendant sold RTJ Apparel to discount stores, including The Golf Warehouse.  Indeed, given that the Court found that sales to the stores at issue may harm Plaintiff's brand and irreparable injury is therefore presumed, there is little dispute that Plaintiffs established that serious questions are raised concerning Plaintiffs' likelihood of success on the merits.

**II.  Plaintiffs Request An Oral Hearing and Leave to Submit Additional Evidence**

The Order stated "Until RTJ2 either provides adequate evidence to support its interpretation of the Agreement or proves that it is suffering actual injury regardless of the purported breach of the Agreement, the Court cannot conclude that it is suffering irreparable harm."  (Order pp. 13-14).  Plaintiffs request an additional oral hearing before the Court to provide further testimony and leave to submit additional evidence in support of their claims and arguments, including evidence on the definition of a discount store, such as expert testimony and dictionary definitions.

**CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that the Court reconsider its denial of Plaintiffs' Motion for Preliminary Injunction and enjoin Defendant from (1) selling apparel bearing the Robert Trent Jones trademarks to discount stores; and (2) selling damaged, defective, seconds or otherwise non-conforming apparel bearing the Robert Trent Jones trademarks.  Plaintiffs also request an oral hearing to provide further testimony and leave to submit additional evidence to aid the Court in examining the Plaintiffs' evidence on the contractual definition of discount stores and Plaintiffs' irreparable harm.

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING  PLAINTIFFS'  MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

9

|   |   |
|---|---|
|   | Respectfully submitted, |

Dated:  February 15, 2008

_____
Richard E. Levine (SB #88729)
LEVINE & BAKER LLP
One Maritime Plaza, Suite 400
San Francisco, CA  94111
Telephone:  (415) 391-8177
Facsimile: (415) 391-8488
rlevine@levinebakerlaw.com

Joseph V. Norvell (*pro hac vice*)
Joseph T. Kucala (*pro hac vice*)
Jay M. Burgett (*pro hac vice*)
NORVELL IP LLC
1776 Ash Street
Northfield, IL  60093
Telephone:  (847) 809-2212
Facsimile:  (312) 268-5063
jkucala@norvellip.com

Attorneys for Plaintiffs

ROBERT TRENT JONES II, INC.
ROBERT TRENT JONES LICENSING
GROUP, LLC

**MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING  PLAINTIFFS'  MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ORAL HEARING AND LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

10

# EXHIBIT 1

ROBERT TRENT JONES SECONDARY MARKET POLICY

All secondary market orders for Robert Trent Jones are to have the inventory processed by the re-label department prior to the order being pulled. The re-label department is to have all neck labels removed, poly bags removed, and tissue removed. All inventory that has been de-labeled is to be transferred from cases with Robert Trent Jones markings to cases with GEAR For Sports markings.

All tissue is to be saved and recycled for standard Robert Trent Jones orders. All Robert Trent Jones cases are to be picked up and bailed for recycling. All neck labels are to be disposed of.

Below are the procedures for de-labeling Robert Trent Jones inventory that will be shipped to a secondary market customer.

1.) Inventory is for the secondary market order is to be identified by style, color, size and quantity.
2.) Inventory is to be pulled and miscellaneous issue transaction should be preformed to move this inventory to a QA account so it is non-nettable
3.) Inventory is to be pulled and transferred to the re-label area at 9700 Commerce
4.) Neck labels, poly bags, and tissue are to be removed from all garments
5.) Garments are to be packed back into new GEAR For Sports cases
6.) New case labels are to be made for each case with the new GEAR style number
7.) The closed cases are to be transferred back to the Advantage Warehouse
8.) The Robert Trent Jones inventory should be removed from the QA status and transferred to a new GEAR style number
9.) The secondary market order can then be entered against the new style number
10.) Any financial losses in inventory value as a result of the sale to the secondary market must be approved prior to the transaction

GFSI000512