**BRYAN CAVE LLP**
Jennifer A. Jackson (SBN 192998)
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200
jjackson@bryancave.com

**BRYAN CAVE LLP**
Robert J. Hoffman (*Pro Hac Vice*)
Tarun Mehta (*Pro Hac Vice*)
3500 One Kansas City Place
1200 Main Street
Kansas City, Missouri 64105
Telephone:    (816) 374-3200
Facsimile :    (816) 374-3300

Attorneys for Defendant
GFSI, INC. d/b/a GEAR FOR SPORTS, INC.

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT TRENT JONES II, INC., and ROBERT TRENT JONES LICENSING GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GFSI, INC. d/b/a GEAR FOR SPORTS, INC.,<br><br>Defendant. | Case No. C07-04913-EDL<br><br>**DEFENDANT GFSI, INC.'S AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS**<br><br>**Date: May 23, 2008<br>Time: 10 a.m.<br>Judge: Samuel Conti<br>Courtroom 1** |

For its Amended Answer against Plaintiffs Robert Trent Jones II, Inc. ("RTJ", Inc."), and Robert Trent Jones Licensing Group, LLC ("RTJ Licensing") (collectively "Plaintiffs"), Defendant GFSI, Inc. d/b/a Gear for Sports, Inc. ("GFSI") responds as follows:

### NATURE OF ACTION

1.  Paragraph 1 of the Complaint states a legal conclusion to which no response is required. GFSI denies committing any acts giving rise to Plaintiffs' claims.

2. GFSI denies the allegations in paragraph 2 of the Plaintiffs' Complaint.

**PARTIES**

3. GFSI lacks knowledge or information sufficient to verify the truth of the allegations of paragraph 3 and therefore denies the allegations in paragraph 3 of the Plaintiffs' Complaint.

4. GFSI lacks knowledge or information sufficient to verify the truth of the allegations of paragraph 4 and therefore denies the allegations in paragraph 4 of the Plaintiffs' Complaint.

5. GFSI lacks knowledge or information sufficient to verify the truth of the allegations of paragraph 5 and therefore denies the allegations in paragraph 5 of the Plaintiffs' Complaint.

6. GFSI lacks knowledge or information sufficient to verify the allegations of paragraph 6 and therefore denies the allegations in paragraph 6 of the Plaintiffs' Complaint.

7. GFSI admits the allegations in paragraph 7 of the Plaintiffs' Complaint.

8. GFSI denies committing any acts giving rise to Plaintiffs' claims, but does not contest jurisdiction or venue in this matter.

9. GFSI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and therefore denies the allegations in paragraph 9 of the Plaintiffs' Complaint.

10. GFSI admits that it contacted RTJ Licensing for the purpose of discussing the idea of licensing the name and mark ROBERT TRENT JONES in connection with a line of high quality golf apparel. GFSI denies the remaining allegations in paragraph 10 of the Plaintiffs' Complaint.

11. GFSI admits that it presented RTJ Licensing with a proposed business plan, a copy of which is attached to the Complaint as Exhibit A. GFSI denies the remaining allegations in paragraph 11 of the Plaintiffs' Complaint.

12. GFSI admits that paragraph 12 of the Plaintiffs' Complaint accurately quotes the proposed business plan, in part, but denies Plaintiffs' construction of the document is accurate.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

13. GFSI admits that paragraph 13 of the Plaintiffs' Complaint accurately quotes the document in part, but denies Plaintiffs' construction of the document as a "representation." GFSI denies the remaining allegations of paragraph 13.

14. GFSI admits that the parties entered into a written License Agreement to commence on May 1, 2005. Further answering, GFSI states that the terms of that written agreement speak for themselves. GFSI denies all other allegations in paragraph 14 of the Plaintiffs' Complaint.

15. Answering paragraph 15 of the Complaint, GFSI states that the License Agreement is a written contract with terms that speak for themselves. GFSI denies the remaining allegations of paragraph 15.

16. GFSI admits that the License Agreement grants GFSI the right to use the Licensed Rights on terms specifically set out in the License Agreement. GFSI denies any remaining allegations in paragraph 16 of the Plaintiffs' Complaint.

17. GFSI admits that the License Agreement allows GFSI to distribute, display and promote and sell Licensed Products in the United States and its territories, Canada, Mexico and Japan. GFSI denies any remaining allegations in paragraph 17 of the Plaintiffs' Complaint.

18. GFSI admits that the License Agreement provides for a calculation of minimum royalty payments to be made. GFSI denies any remaining allegations in paragraph 18 of the Plaintiffs' Complaint.

19. GFSI admits that the License Agreement provides for a price modification of the royalty payments if GFSI makes any sales of Licensed Products to an associated or affiliated company. GFSI denies the remaining allegations of paragraph 19 of the Complaint.

20. Answering paragraph 20 the Complaint, GFSI states that the License Agreement is a written document with terms that speak for themselves. GFSI denies the remaining allegations contained in paragraph 20 of the Plaintiffs' Complaint.

21. GFSI denies the allegations of Paragraph 21 of the Plaintiffs' Complaint.

22. GFSI admits that paragraph 22 of the Plaintiffs' Complaint accurately quotes a portion of the License Agreement, but denies Plaintiffs' construction of the document is accurate.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

23. GFSI admits that the License Agreement is a written document with terms that speak for themselves. GFSI denies the remaining allegations contained in paragraph 23 of the Plaintiffs' Complaint.

24. GFSI admits that the License Agreement is a written document with terms that speak for themselves. GFSI denies the remaining allegations contained in paragraph 24 of the Plaintiffs' Complaint.

25. GFSI admits that Section 7 of the License Agreement requires certain advertising to be approved by RTJ Licensing. GFSI denies all remaining allegations of Paragraph 25 of the Plaintiffs' Complaint.

26. GFSI admits that Paragraph 26 of the Plaintiffs' Complaint accurately quotes parts of the License Agreement, but denies Plaintiffs' construction of the document is accurate. GFSI denies the remaining allegations in paragraph 26 of the Complaint.

27. GFSI admits that the License Agreement is a written document with terms that speak for themselves. GFSI denies the remaining allegations contained in paragraph 27 of the Plaintiffs' Complaint.

28. GFSI denies the allegations in Paragraph 28 of the Plaintiffs' Complaint.

29. GFSI admits that the License Agreement is a written document with terms that speak for themselves. GFSI denies the remaining allegations contained in paragraph 29 of the Plaintiffs' Complaint.

30. GFSI admits that Section 6.5 of the License Agreement requires GFSI to annually submit its proposed Marketing, Distribution, Financial and Quality Plan to RTJ Licensing for approval. GFSI denies all remaining allegations in Paragraph 30 of the Plaintiffs' Complaint.

31. GFSI admits that the License Agreement is a written document with terms that speak for themselves. GFSI denies the remaining allegations contained in paragraph 31 of the Plaintiffs' Complaint..

32. GFSI admits that the License Agreement is a written document with terms that speak for themselves. GFSI denies the remaining allegations contained in paragraph 32 of the Plaintiffs' Complaint.

33. GFSI admits that the parties met on June 5, 2007. GFSI denies all other allegations in paragraph 33 of the Plaintiffs' Complaint.

34. GFSI denies the allegations in paragraph 34 of the Plaintiffs' Complaint.

35. GFSI denies the allegations in paragraph 35 of the Plaintiffs' Complaint.

36. GFSI denies the allegations in paragraph 36 of the Plaintiffs' Complaint, including all of its sub-parts.

37. GFSI denies the allegations in paragraph 37 of the Plaintiffs' Complaint.

38. GFSI denies the allegations in paragraph 38 of the Plaintiffs' Complaint.

## FIRST CLAIM FOR RELIEF

## FRAUDULENT MISREPRESENTATION

39. In response to Paragraph 39, GFSI incorporates by reference each of its responses to Paragraphs 1 through 38.

40. GFSI denies the allegations in paragraph 40 of the Plaintiffs' Complaint.

## SECOND CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

41. In response to Paragraph 41, GFSI incorporates by reference each of its responses to Paragraphs 1 through 40.

42. GFSI denies the allegations in paragraph 42 of the Plaintiffs' Complaint.

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACT

43. In response to Paragraph 43, GFSI incorporates by reference each of its responses to Paragraphs 1 through 42.

44. Paragraph 44 states a conclusion of law to which no response is required. To the extent a response is deemed required, GFSI denies the allegations in paragraph 44 of the Plaintiffs' Complaint.

45. GFSI denies the allegations in paragraph 45 of the Plaintiffs' Complaint.

46. GFSI denies the allegations in paragraph 46 of the Plaintiffs' Complaint.

47. GFSI denies the allegations in paragraph 47 of the Plaintiffs' Complaint.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

48. GFSI denies the allegations in paragraph 48 of the Plaintiffs' Complaint.

## FOURTH CLAIM FOR RELIEF

## TRADEMARK INFRINGEMENT

49. In response to Paragraph 49, GFSI incorporates by reference each of its responses to Paragraphs 1 through 48.

50. GFSI denies the allegations in paragraph 50 of the Plaintiffs' Complaint.

51. GFSI denies the allegations in paragraph 51 of the Plaintiffs' Complaint.

52. GFSI denies the allegations in paragraph 52 of the Plaintiffs' Complaint.

## FIFTH CLAIM FOR RELIEF

## UNFAIR COMPETITION

53. In response to Paragraph 53, GFSI incorporates by reference each of its responses to Paragraphs 1 through 52.

53.[1/] GFSI denies the allegations in the second paragraph numbered 53 in the Plaintiffs' Complaint.

54. GFSI denies the allegations in paragraph 54 of the Plaintiffs' Complaint.

## SIXTH CLAIM FOR RELIEF

## TRADEMARK DILUTION

55. In response to Paragraph 55, GFSI incorporates by reference each of its responses to Paragraphs 1 through 54.

56. GFSI denies the allegations in paragraph 56 of the Plaintiffs' Complaint.

57. GFSI denies the allegations in paragraph 57 of the Plaintiffs' Complaint.

WHEREFORE, having fully answered, Defendant GFSI prays that this Court enter judgment against Plaintiffs' claims, that costs be assessed against Plaintiffs and for such other relief as the Court shall deem just and proper.

---

[1/] Plaintiffs' Complaint erroneously contains two paragraphs numbered "53". For the purpose of responding directly and by paragraph number to the allegations, GFSI intentionally repeats the error here.

## AFFIRMATIVE AND OTHER DEFENSES

58. GFSI incorporates by reference each of its responses to Paragraphs 1 through 57.

59. GFSI's First Affirmative Defense is that Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

60. GFSI's Second Affirmative Defense is that Plaintiffs' claims are barred by the statute of frauds.

61. GFSI's Third Affirmative Defense is that Plaintiffs' tort claims are barred or limited by the economic loss doctrine.

62. GFSI's Fourth Affirmative Defense is that Plaintiffs' claims are barred by the doctrines of laches, waiver, unclean hands, and estoppel.

63. GFSI's Fifth Affirmative Defense is that to the extent Plaintiffs were damaged, which GFSI at all times denies, Plaintiffs' damages were caused, in whole or in part, by the carelessness, negligence and gross negligence of Plaintiffs and others not within the control of GFSI.

64. GFSI's Sixth Affirmative Defense is that to the extent Plaintiffs were damaged, which GFSI at all times denies, Plaintiffs' have neglected, failed and refused to mitigate their damages, if any, and are thereby barred from recovery herein, or any such recovery must be reduced accordingly.

65. GFSI's Seventh Affirmative Defense is that Plaintiffs' claims for punitive, exemplary, or liquidated damages, if granted, would be grossly excessive and would violate the Due Process Clause of the U.S. Constitution. GFSI has not received fair notice that it could be subject to substantial punitive damages for the conduct alleged. Its conduct, if any, was not deliberate. The liquidated damages Plaintiffs' seek are disproportionate to any actual damages and far exceed any civil or criminal sanctions that could be imposed for similar alleged conduct.

66. GFSI's Eighth Affirmative Defense is that Plaintiffs' claims for punitive, exemplary, or liquidated damages, if granted, would violate the Eighth Amendment to the U.S. Constitution because it seeks to impose an excessive fine upon GFSI, is penal in nature and seeks to punish GFSI upon vague standards.

67. GFSI's Ninth Affirmative Defense is that Plaintiffs' claims for punitive, exemplary, or liquidated damages, if granted, would violate the Equal Protection Clause of the U.S. Constitution because it discriminates against GFSI on the basis of wealth and because different amounts can be awarded against two or more defendants for the same conduct where those defendants differ only in material wealth.

68. GFSI's Tenth Affirmative Defense is that Plaintiffs' claims for punitive, exemplary, or liquidated damages, if granted, would violate the Separation of Powers Doctrine since this Court would be usurping the exclusive power of the legislature to define crimes and establish punishment.

69. GFSI's Eleventh Affirmative Defense is that Plaintiffs' claim for punitive, exemplary, or liquidated damages, if granted, would violate the U.S. Constitution as an ex post facto law. Any such award, would effectively be criminalizing conduct after it has occurred and without appropriate advance notice to GFSI that such conduct may subject it to criminal punishment.

70. GFSI's Twelfth Affirmative Defense is that to the extent Plaintiffs' claims for punitive, exemplary, or liquidated damages rely on acts of GFSI's agents imputed to GFSI, the limitations inherent in general agency principles prohibit recovery.

71. GFSI's Thirteenth Affirmative Defense is that Plaintiffs' claims relating to the 2004 Proposed Plan are barred because such agreements were expressly excluded from the final drafting of the contract at issue in this case.

72. GFSI's Fourteenth Affirmative Defense is that Plaintiffs' claims of fraudulent misrepresentation, and negligent misrepresentation are barred because those claims rely on the 2004 Proposed Plan, which is, at best, a negotiating document that was not incorporated into the final contract that governs the relationship between the parties.

WHEREFORE, having fully answered, Defendant GFSI prays that this Court enter judgment against Plaintiffs on each of their claims, that costs be assessed against Plaintiffs, and for such other relief as the Court shall deem just and proper.

## COUNTERCLAIM

Defendant GFSI alleges the following facts in support of its Counterclaim against Plaintiffs Robert Trent Jones II, Inc. ("RTJ", Inc."), and Robert Trent Jones Licensing Group, LLC ("RTJ Licensing") (collectively "Plaintiffs"):

1. GFSI and Plaintiffs are parties to a License Agreement that defines their relationship.

2. The purpose of the License Agreement was for both parties to profit from the manufacture and distribution of golf apparel bearing marks registered to RTJ or RTJ2.

3. The parties negotiated terms that provided for what would happen if sales of RTJ Apparel were not as successful as the parties hoped they would be.

4. RTJ2 was protected by a minimum royalty provision that would allow RTJ2 to receive a certain minimum annual royalty for the term of the agreement.

5. Likewise, the License Agreement provided that GFSI's duty to dedicate resources and staffing to the business contemplated by the parties was to be guided and limited by the bounds of commercial reasonableness such that, if the business contemplated by the Agreement was not successful, GFSI's investment and risk would be limited to the minimum royalty obligation.

6. The License Agreement provides that RTJ2 would not unreasonably withhold approval to cease manufacturing or distributing any Licensed Product in commercial quantities, if so requested by GFSI.

7. By the Summer of 2007, sales of RTJ Apparel had become so weak that it became commercially unreasonable for GFSI to continue manufacturing and distributing new seasonal styles of the Licensed Product unless a change could be made to the targeted market for the product.

8. GFSI advised RTJ2 that sales of the Licensed Products were considerably less than the parties had hoped, and that continued manufacture and distribution of new Licensed Product was not commercially reasonable, absent a change in the targeted market for the Licensed Product.

9. RTJ2 unreasonably rejected GFSI's request for consent to change the targeted market for the Licensed Product.

10. In response to GFSI's reasonable request, RTJ2 responded by falsely claiming that GFSI was in breach of the Agreement because GFSI was not willing to continue to invest more and more money in developing a brand that was not successful or profitable.

11. RTJ2 then made unreasonable demands to GFSI to stop selling to various stores that Plaintiffs, without factual basis, declared to be "discount stores" under the License Agreement.

12. As an accommodation to Plaintiffs, GFSI agreed to cease selling RTJ Apparel to certain stores, including Stein Mart, Syms Corporation, and TJ Maxx—even though the parties' written agreement did not require that.

13. GFSI made this accommodation based on its desire to cooperate with Plaintiffs in what GFSI believed was Plaintiffs' honest concern regarding the sale of RTJ Apparel to "discount stores," despite the fact that GFSI strongly disputed Plaintiffs interpretation of the License Agreement and Plaintiff's claimed interpretation of the phrase "discount stores".

14. Plaintiff never actually believed that Stein Mart, Syms Corporation, nor TJ Maxx were "discount stores" as that term is used in the License Agreement. Rather, Plaintiff had no idea what a "discount store" even is and had no criteria or basis for determining whether any store is a "discount store" or not.

15. The real objective of RTJ2's claims of breach was to make the License Agreement, and GFSI's relationship with RTJ2, so unprofitable and unpleasant that GFSI would pay RTJ2 more than the License Agreement required and more than was fair, in order to simply end the relationship.

16. Plaintiffs' objective was to attempt to force GFSI to design and produce more RTJ Apparel, while simultaneously hindering GFSI's ability to sell RTJ Apparel by wrongfully

claiming that the License Agreement restricted the market of potential buyers. In this way, RTJ2 intended to force GFSI to accumulate a large and difficult to sell inventory of RTJ Apparel.

17. Plaintiff's real purpose was to use its false accusations and arguments to enhance RTJ2's negotiating position with GFSI for dissolution of the License Agreement.

18. RTJ2's actions were in violation of its duty under California common law to act in accordance with the principles of good faith and fair dealing.

19. RTJ2's conduct, as described above, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act: the act of falsely declaring that GFSI was selling clothing to "discount stores" without even knowing how RTJ2 would define the term "discount stores".

20. Plaintiffs conduct unfairly frustrates the agreed common purposes of the parties and disappoints the reasonable expectations of GFSI to sell RTJ Apparel in accordance with the terms of the License Agreement.

21. Plaintiffs conduct deprived GFSI of the benefits of the Agreement in that it caused GFSI a significant loss of revenue from being wrongfully impeded, since at least July 2007, from selling RTJ Apparel to various stores that RTJ contends are "discount stores." Plaintiff's conduct also undermined the entire purpose of the Agreement.

22. Plaintiffs conduct has caused damages to GFSI in an amount to be determined at trial based on the lost profits GFSI would have been able to obtain but for RTJ2's wrongful claims and assertions.

23. In addition, the License Agreement provides that "RTJ2 shall reimburse [GFSI] for all reasonable expenses, legal fees and costs required to enforce RTJ2's obligations under this Agreement."

24. GFSI has incurred, and will continue to incur, substantial expenses, legal fees and costs, in order to enforce RTJ2's obligations under the Agreement.

**PRAYER FOR RELIEF**

**WHEREFORE**, GFSI demands the following relief:

(1) That the Court enter Judgment in favor of GFSI that Plaintiffs' willfully breached the License Agreement that binds the parties.

(2) That Plaintiffs be ordered to pay GFSI's expenses, costs and reasonable attorneys' fees pursuant to Section 18.8 of the License Agreement.

(3) That Plaintiffs be ordered to pay the costs associated with lost profits to GFSI, to be determined at trial, based on the cessation of sales to the stores Plaintiff has wrongfully claimed are "discount stores".

(4) That GFSI shall have such other relief as this Court may deem just and proper.

Dated:   March 14, 2008

Respectfully submitted,

**BRYAN CAVE LLP**
Jennifer A. Jackson
Robert J. Hoffman
Tarun Mehta


By: s/ Tarun Mehta
       Tarun Mehta
Attorneys for Defendant
GFSI, INC. d/b/a GEAR FOR SPORTS, INC.

# **PROOF OF SERVICE**

I am employed in the County of Jackson, State of Missouri.  I am over the age of 18 and not a party to the within action.  My business address is 1200 Main Street, Suite 3500, Kansas City, MO  64105.

On March 14, 2008, I served DEFENDANT'S AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS on each interested party in this action, as follows:

| | |
|---|---|
| Richard Levine | *Attorneys for Plaintiff* |
| Levine & Baker | Tel: 415-391-8177 |
| One Maritime Plaza, Suite 400 | Fax: 415-391-8848 |
| San Francisco, CA  94111 | Email: relevine@levinebakerlaw.com |
| | |
| Joseph V. Norvell (pro hac vice) | *Attorneys for Plaintiff* |
| Joseph T. Kucala (pro hac vice) | Tel:  630-453-8380 |
| Jay M. Burgett ( pro hac vice) | Fax: 312-268-5063 |
| Norvell IP llc | Email: jkucala@norvellip.com |
| 1776 Ash Street | |
| Northfield, IL  60093 | |

☐     (BY MAIL)  I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above.  I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Kansas City, Missouri.  I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☐     (BY E-MAIL)  I caused a true copy of the foregoing document to be served by e-mail transmission at the time shown on each transmission, to each interested party at the e-mail address shown above.  Each transmission was reported as complete and without error.

Executed on _____, 2008, at Kansas City, Missouri.

☐ (FEDERAL ONLY)  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America and the State of Missouri that the foregoing is true and correct.


s/Lisa Deacy